MARCIA FLANDERS, Appellant, *v.* STATE OF NEVADA, DEPARTMENT OF COMMERCE, REAL ESTATE DIVISION, Respondent.

No. 6321

June 25, 1971                    486 P.2d 499

*Fry & Fry,* of Reno, for Appellant.

*W. Bruce Beckley,* of Las Vegas, for Respondent.

**OPINION**

By the Court, GUNDERSON, J.:

On this appeal, the paramount issue is whether the Nevada Real Estate Advisory Commission abused its discretion by deciding that certain ostensible improprieties in the handling of appellant's "trust account" warrant revoking her license to do business as a real estate broker.[1]

Although respondent originally charged appellant with other violations of law, the Nevada Real Estate Advisory Commission found her only to have violated NRS 645.310(3), which provides that "[a] real estate broker shall not commingle the money or other property of his principal with his own," and NRS 645.310(5), which provides generally that "[e]very real estate broker required to maintain such a separate custodial or trust account shall keep records of all funds deposited therein,

---

[1]NRS 645.760 provides that from an adverse ruling of the commission a licensee may appeal to district court, and: "Upon the hearing of the appeal, the burden of proof shall be upon the appellant, and the court shall receive and consider any pertinent evidence, whether oral or documentary, concerning the action of the commission from which the appeal is taken, but shall be limited solely to a consideration and determination of the question of whether there has been an abuse of discretion on the part of the commission in making such decision." "The function of this court at this time is the same as that of the lower court." Randono v. Nev. Real Estate Comm'n, 79 Nev. 132, 137, 379 P.2d 537, 539 (1963).

which records shall indicate clearly the date and from whom he received money, the date deposited, the dates of withdrawals, and other pertinent information concerning the transaction, and shall show clearly for whose account the money is deposited and to whom the money belongs."

Appellant's testimony is the only evidence in the record. Although respondent's counsel was aware respondent's investigator was deceased, and must have known NRS 645.690 entitles a licensee "[t]o examine, either in person or by counsel, any and all persons complaining against him, as well as other witnesses whose testimony is relied upon to substantiate the charge made," he nonetheless attempted to interject the deceased investigator's report into evidence by interrogating appellant about the report, and then offering it in evidence. Appellant's counsel made a timely objection that the report was hearsay, whereupon respondent's counsel stated: "I will amend my offer of the letter and the analysis simply to be made a part of the record, not for the truth of the statements therein contained, but for explanation of the testimony which has previously been given by this witness." Thereupon, appellant's counsel stated: "I will withdraw the objection if it is admitted on that basis." Thus, the investigator's report can be deemed to have no independent probative significance.

Appellant's testimony establishes that she commonly utilized her trust account not merely to hold funds that were the sole property of her clients, but also as an instrument to receive and divide funds in which both she and her clients had an interest, such as rents from which appellant was entitled to take a commission. Although respondent has not promulgated any specific regulations implementing NRS 645.310(5), appellant maintained a ledger book, with appropriate columns to enter pertinent information concerning trust account deposits. During respondent's only previous survey of appellant's office, in 1965, respondent's representative apparently found no deficiencies in the manner appellant maintained her records. In recording detail, omissions and errors did evidently occur, none of which were such as to cause loss to any client. Appellant acknowledges she is not a good bookkeeper; indeed, when the office survey out of which this action arose was instituted, it appears appellant had already delivered her records to an accountant, seeking assistance in establishing a better system. At the time of the hearing before the Commission, she produced corrected records, which respondent does not seriously appear to question either as to form or content. She explained

her accounting problem arose because, to her dismay, properties she had undertaken to sell had become management projects that she, with no office personnel, was not well equipped to handle. In this regard, it appears she has acted responsibly to correct a problem into which any undercapitalized business person may inadvertently fall.

1. Appellant contends that her usual method of utilizing her "trust account" did not constitute "commingling."[2] Respondent apparently contends that to deposit in a "trust account" money in which the practitioner has any interest is "commingling" *per se,* within the meaning of NRS 645.310 (3). No authority has been cited in support of either position.

Under a rule similar to our statute, the Supreme Court of California has recognized that a "trust account" may properly be used as a vehicle to receive and divide funds in which a professional practitioner has an interest, and that "commingling" does not result unless the practitioner fails to withdraw his share "at the earliest reasonable time." Black v. State Bar of California, 368 P.2d 118, 122 (Cal. 1962). The court also held in substance that technical "commingling," resulting from a practitioner's failure to withdraw his own share promptly, did not constitute grounds for disciplinary proceedings, where members of the profession had never been notified of their duties in this regard.[3] In general, we agree. It appearing to us

---

[2] In this regard, Appellant's Opening Brief states her position as follows: "First in regard to paragraph 3, the broker shall not commingle the money or other property of his principal with his own. The Appellant did not take the principal's money and put it in her personal account. This would likely have been commingling. NO, the Appellant kept all incoming money in the 'trust account' for all of it was not hers; she had accounting to make to Bowen, King and Russell; she also had money to pay out on the encumbrance on the property. Would the Commission have her put all the incoming money into her personal account and pay Bowen, King and Russell and the encumbrance payment? It appears Appellant handled the money in a quite proper manner for most of this money was truly trust money and properly in the 'trust account.' "

[3] In this regard, the Supreme Court of California said: ". . . When petitioner received corporate funds in which he had an agreed interest, he should have separated his money from the balance at the earliest reasonable time. When he held his client's funds, part of which he subsequently became entitled to take for himself, he should have separated his money from the balance at the earliest reasonable time after his own interest became fixed.

"In the absence of any prior decision holding that petitioner's actions violated the commingling rule, however, we have concluded that the charges against him should be dismissed insofar as they are based upon his failure to segregate his money from that of his client. . . ." 368 P.2d, at 122–123.

that appellant's "trust account" might properly be used to receive and divide funds in which both she and her clients were interested, that respondent has never promulgated any rule defining or limiting the time within which she was obligated to withdraw the moneys to which she was entitled, and that there is in any event no evidence or finding that she allowed her own funds to remain in the "trust account" an undue length of time, her accustomed use of her "trust account" cannot serve as ground for disciplinary proceedings against her.[4]

Respondent has attempted to bolster its arguments concerning "commingling" with reference to the fact that appellant once advanced a client $350 from her own funds, took the client's post-dated check in exchange, reimbursed herself with a $350 check drawn on her "trust account," then reimbursed the "trust account" by depositing the client's check when it matured. Although accommodating her client in this fashion may have been irregular, appellant's conduct substantiates neither of the charges of which she was found guilty; nor does it demonstrate any lack on her part of general competence or good faith. Since no probative force may be given to conclusions set forth in the deceased investigator's hearsay report, the record reflects no other improper use of clients' funds. That report based a conclusion that other improper invasions had occurred upon a totally gratuitous assumption, to wit: that if the investigator could not identify the owners of a given deposit, appellant had no interest therein. However, appellant's testimony reflects that she did not use clients' funds, as the investigator's report concluded.[5]

---

[4]On one occasion, appellant did place in her "trust account" loan proceeds in which no client had an interest, believing this was proper because she secured the loan by encumbering property she had contracted to sell to a client. Asked about this, she explained: "You see, I borrowed money against this property. The property was being sold to Russell, so I felt that the loan should be of record on the account. Actually, the principal seller, that would be me, this money I borrowed for my own use, so I deposited it in the account to show that it was borrowed against the property, then withdrew that money, disbursed it, so to speak to myself." Appellant's unnecessary pains to be scrupulous about this transaction may have resulted in a technical commingling, for the brief span of time the loan proceeds remained in her trust account; however, such infraction must certainly be recognized as trivial.

[5]Interrogation of appellant on this point proceeded as follows:

"Q   Now, his report, reading in the second paragraph on page 2, it reads:

'It was finally determined that as of May 31, 1968 the funds in the trust account were $940.22 short of what is due the various clients. Upon questioning Mrs. Flanders about the shortage, she disagreed and

2. Upon the facts of this case, appellant's failure to maintain proper records, and such other technical violations of law as the record may reflect, will not support revocation of her license. In Black v. State Bar of California, supra, the Supreme Court of California rejected the Board of Bar Governors' recommendation that the practitioner be suspended for three years, saying:

". . . He has demonstrated his good faith by undertaking the reorganization of his office procedures in accordance with the recommendations of an established accounting firm.

"Petitioner, however, not only violated Rule 9 as amended but failed to maintain proper office records. For these infractions it is sufficient that petitioner be reprimanded publicly. This opinion shall serve as such reprimand." 368 P.2d, at 118.

Similarly, in In re Reno, 57 Nev. 314, 64 P.2d 1036 (1937), although appellant had committed a misdemeanor by failing to report a prostitute infected with venereal disease, we modified

---

proceeded to come up with figures (out of thin air) which reflects a shortage of only $196.23.'

"I am not asking you whether that statement is correct. At least that statement appears in the report, does it not?

"A   Yes, it does.

"Q   Is it a fact that Mr. Stalnaker did point out to you that you were short $940.22?

"A   Yes, he really sent me when he told me that.

"Q   Do you state now that that was a correct or incorrect statement?

"A   It was an incorrect statement.

"Q   In what fashion was it incorrect, or what manner was it incorrect?

"A   Well, it just wasn't factual.

"Q   Let me ask this: Was there actually on the date of May 31, 1968 a shortage of $196.23?

"A   When Mr. Stalnaker pointed this out to me I tried to find out from what he was pointing at, what he was referring to, and I quickly, all I could come up with was $196.23. I wasn't sure that was at all correct. What date did you say, Mr. Beckley?

"Q   May 31, 1968.

"A   May 31, 1968. In the account itself on May 31 of 1968, Mr. Beckley, there was no shortage, in fact.

"Q   I'm not asking what your bank balance was as of that date. I'm asking you whether or not there was sufficient funds in the account to pay all of your clients.

"A   Yes, there was."

Appellant's later testimony pointed out the assumption upon which Mr. Stalnaker's gratuitous conclusions were based:

"I read this letter and from the way he states it he has taken the figures that I didn't provide clear answers to and seemingly added them all up."

an order of the district court which had affirmed the state board of medical examiners' decision to revoke his medical certificate. We ordered him immediately reinstated, noting that moral turpitude had not been demonstrated. "If we could feel that the conduct complained of was willful and intentional, we would affirm the order appealed from in all particulars." 57 Nev., at 330.

For one who is qualified, pursuit of a profession is a right, and "not a matter of the State's grace or favor." In re Schaengold, 83 Nev. 65, 68, 422 P.2d 686, 688 (1967); Ex parte Kellar, 81 Nev. 240, 401 P.2d 616 (1965). "The purpose of real estate licensure is to bar the dishonest or incompetent from entry into this occupation." Holland Rlty v. Nev. Real Est. Comm'n, 84 Nev. 91, 98, 436 P.2d, 422, 426 (1968). Appellant has demonstrated that the Commission abused its discretion (NRS 645.760) by showing that respondent has failed to present a "prima facie case" (NRS 645.610, NRS 645.680) of such violations as would reasonably demonstrate appellant's unfitness to continue in her chosen occupation. Although we commend respondent's efforts to protect the public, without substantial evidence to support it, we may not permit Commission's decision in this case to stand.

To the extent appellant's conduct may warrant punishment, "[w]e think the demands of justice have already been served." In re Reno, 57 Nev., at 330.

Reversed.

ZENOFF, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.