[No. D012599. Fourth Dist., Div. One. July 30, 1991.]

JACOB SCHNEIDER, a Minor, Plaintiff and Appellant, v. FRIEDMAN, COLLARD, POSWALL & VIRGA, Defendant and Respondent.

**COUNSEL**

Allan Lame for Plaintiff and Appellant.

Friedman, Collard & Poswall, John M. Poswall and Allan J. Owen for Defendant and Respondent.

## OPINION

**WIENER, Acting P. J.**—In this our third visit to the subject of this controversy,[1] minor plaintiff Jacob Schneider represented by his mother and guardian ad litem Marcia Schneider appeals from a summary judgment entered in favor of defendant Sacramento law firm Friedman, Collard, Poswall & Virga (Friedman Collard). In 1987, Friedman Collard through partner Morton Friedman represented Schneider in a medical malpractice action against the Kaiser Foundation Hospitals in San Diego County. Friedman was successful in obtaining an arbitration award consisting of (1) a lump sum payment of $1 million and (2) $2,624,000 in periodic payments at a rate of $3,650 per month for 60 years or until Jacob's death, whichever occurred first. (See *Schneider v. Kaiser Foundation Hospitals, supra,* 215 Cal.App.3d at p. 1315.) An annuity to fund the periodic payments was later purchased by Kaiser for $513,631.06.[2] (*Id.* at p. 1320.) The arbitration award said nothing about attorney's fees.

Following the award, Friedman asked the arbitrators to amend the award in several respects including determining its total value for the purposes of calculating attorney's fees as required by Business and Professions Code section 6146. The arbitrators agreed with Friedman in that regard, specifying that the total value was $3,624,000, i.e., the $1 million lump sum payment plus the arithmetic sum of the future periodic payments. No mention was made by Friedman or the arbitrators that the value of the award might be determined by reference to the present value of the future payments. According to the Schneiders, Friedman never advised them there was any issue as to how the fee should be calculated. As we explained in our earlier opinion, the difference in terms of fees is significant. "[T]he attorney's fees based on a value of $3,624,000 is approximately $400,000. Computed on the basis of the present value of the future stream of payments the fee is approximately

---

[1] See *Schneider v. Kaiser Foundation Hospitals,* D007880 (unpub. opn.) filed September 15, 1989; *Schneider v. Kaiser Foundation Hospitals* (1989) 215 Cal.App.3d 1311 [264 Cal.Rptr. 227].

[2] Friedman Collard correctly points out that the arbitration award included a provision making the entire amount of $3,624,000 due and payable immediately if Kaiser failed to purchase an acceptable annuity or post adequate security within 45 days. Because this eventuality never occurred, we had no occasion in our earlier opinion to discuss what the total value of the award would have been in that event. Obviously to be consistent, the award should have specified that the total value of $1,513,631.06 applied only if Kaiser properly complied with the terms of the award regarding the purchase of the annuity. (See *Schneider v. Kaiser Foundation Hospitals, supra,* 215 Cal.App.3d at p. 1320.)

$200,000." (*Schneider* v. *Kaiser Foundation Hospitals*, *supra*, 215 Cal.App.3d at p. 1319, fn. 5.)

Before the hearing on Friedman's petition to confirm the amended award, the Schneiders discharged the Friedman Collard firm and retained attorney Allan Lame—Marcia Schneider's father—who successfully petitioned the superior court to vacate the amended award and confirm the original award. Friedman Collard appealed. This court in a published opinion held that the superior court correctly refused to confirm the amended award. (*Schneider* v. *Kaiser Foundation Hospitals*, *supra*, 215 Cal.App.3d at p. 1320.) We further explained, however, that the original award should have specified the total value for the purposes of calculating the maximum attorney's fees and that the correct value as a matter of law was the present value of $1,513,631.06. (*Ibid.*) On February 15, 1990, the Supreme Court denied Friedman Collard's petition for review.

While that appeal was pending, a dispute developed between the parties regarding the disposition of approximately $500,000 of the arbitration award which had been deposited by Friedman Collard in a Sacramento savings and loan institution. The savings and loan filed an interpleader action in Sacramento County and the parties proceeded to trial on the issue of how much money the Friedman Collard firm was entitled to as fees and costs for representing Jacob Schneider in the *Kaiser* action.[3] On the same day as this court filed its decision in *Schneider* v. *Kaiser Foundation Hospitals*, *supra*, 215 Cal.App.3d 1311, the Sacramento trial court entered judgment in favor of Friedman Collard in the interpleader action, finding that the total value of the arbitration award for the purpose of calculating attorney's fees was $3,624,000, a finding directly contrary to this court's published opinion.

Despite our opinion and the Supreme Court's denial of review, Friedman Collard refused to concede its entitlement to only $200,000 in fees. Indeed, the firm *appealed* the Sacramento judgment contending the court had failed to award a sufficient amount of prejudgment interest. The Schneiders in turn filed a cross-appeal challenging Friedman Collard's entitlement to anything more than the $200,000 in fees specified in our *Kaiser Hospitals* opinion. In its opening brief filed three months after the Supreme Court denied review in *Kaiser Hospitals*, Friedman Collard failed to even cite our published opinion.

---

[3]Lame unsuccessfully sought a stay of the interpleader action pending our resolution of the *Kaiser Hospitals* appeal.

In its response to the cross-appeal some two and one-half months later, the firm acknowledged our opinion but argued it should not be followed:

"The Fourth District Court of Appeal's decision in *Schneider* v. *Kaiser* (1989) 215 Cal App 3d 1311, is clearly wrong and was clearly in excess of its jurisdiction. Probate Code 3600, et seq. mandates that a trial court, not an appellate court, determine the fees and costs to be allocated to the attorney representing a minor upon a petition to compromise the minor's claim. . . . An appellate court, by definition, is not a fact-finding court. Although the Fourth District went beyond its jurisdiction and did make some factual determinations, clearly this Court, based upon the record before it, has no alternative but to affirm the judgment entered by the trial court with the addition of appropriate interest at the legal rate as requested by FRIEDMAN."

On February 21, 1991, the Court of Appeal, Third Appellate District filed its opinion in *Sacramento Savings & Loan Association* v. *Friedman*, C008093 (nonpublished opinion) reversing the Sacramento superior court judgment. On alternative grounds, the Third District held that the final judgment in the *Schneider* v. *Kaiser Foundation Hospitals* collaterally estopped Friedman Collard from asserting entitlement to more than the $200,000 in fees. It also concluded the San Diego County Superior Court had exclusive jurisdiction to award attorney's fees pursuant to Probate Code section 3601. Accordingly, the Third District ordered the Sacramento County Superior Court to "suspend further proceedings pending the determination of the award of attorney's fees and costs by the San Diego County Superior Court."[4]

In the meantime, Lame on behalf of the Schneiders commenced this action in San Diego against Friedman Collard alleging causes of action for breach of fiduciary duty and fraudulent concealment. The Schneiders allege they have had to pay attorney's fees and other costs as a result of Friedman Collard's failure to fulfill its fiduciary responsibilities to its client, Jacob

---

[4]To clarify, Friedman Collard was correct in arguing to the Third District that we had no power to make factual determinations pursuant to Probate Code section 3600 et seq. Indeed, our opinion made no reference to any Probate Code determination because we were not reviewing such a determination. The sole issue before us was the legal interpretation of Business and Professions Code section 6146. In interpreting that section in light of the arbitration award, we held only that the maximum fee which might be awarded was approximately $200,000. Because this case involved the compromise of a minor's claim, it remains for the San Diego Superior Court to make an award of fees pursuant to the Probate Code as recognized in the Third District's opinion. Certainly nothing in our *Kaiser Hospitals* opinion restricts the authority of the superior court to make an award of fees at less than the $200,000 level should the facts so warrant.

Schneider. Specifically, the Schneiders point to the legal expenses they have incurred in seeking to have the amended arbitration award vacated, defending that result on appeal, appearing in the Sacramento interpleader action and appealing that judgment.[5]

Friedman Collard successfully moved for summary judgment in response to the Schneiders' breach of fiduciary duty complaint. The trial court accepted Friedman Collard's argument that the Schneiders had as yet suffered no compensable damages as a result of the alleged breach of duty.

## DISCUSSION

The issue before us is one of first impression. ▮ Can a client recover in a separate lawsuit attorney's fees and costs from a former lawyer which the client has incurred defending against that lawyer's attempt to collect or retain an unreasonable fee? Frankly, although we might prefer a rule permitting the recovery of legal fees and costs where the lawyer is found to have acted in bad faith or without proper foundation, such authority does not currently exist. Because the Supreme Court has indicated a reluctance to expand the common law exceptions to the "American Rule," which generally precludes the award of attorney's fees to a successful party, we believe any change in the law should emanate from the Supreme Court or the Legislature.

In arguing they are entitled to their attorney's fees as an element—indeed the only element—of damage they have suffered as a result of Friedman Collard's alleged breach of fiduciary duty, the Schneiders place principal reliance on the "third party tort" exception to the American Rule. Our Supreme Court has explained that this exception "allows a plaintiff attorney fees if he is required to employ counsel to prosecute or defend *an action against a third party* because of the tort of the defendant." (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763], italics added.) Here, however, the fees sought by the Schneiders were incurred in litigation with the Friedman Collard firm which is not a third party. The fact that the interpleader action was filed by a third party—Sacramento Savings & Loan—does not change the fact that the litigation was between the Schneiders and Friedman Collard. (See generally 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 263, p. 321.)

---

[5]For the first time in their petition for rehearing, the Schneiders argue they suffered additional damage because Jacob's award earned a lower interest rate for two months following the filling of the Sacramento interpleader action. This argument was never made to the trial court on the motion for summary judgment and we decline to consider it here.

Presumably the rationale for limiting the exception to third party litigation is to prevent a plaintiff from circumventing the American Rule by routinely filing a second action seeking the attorney's fees expended in the first. By its terms, the "third party tort" exception is inapplicable to the Schneiders' claim.

A very narrow "second party tort" exception does exist under California law which by analogy could serve as a basis for allowing clients to recover attorney's fees incurred in litigation against unscrupulous lawyers. In *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796], the Supreme Court recognized that an insurer's tortious breach of the implied covenant of good faith and fair dealing entitles the insured to recover attorney's fees incurred in litigation to obtain the contractual benefits due under the insurance policy. (*Id.* at p. 817.) The *Brandt* court emphasized this holding did not allow the insured to recover the fees incurred prosecuting the bad faith action. (*Ibid.*) Moreover, a finding of bad faith requires that the plaintiff satisfy a heightened standard beyond that which will sustain a simple breach of contract claim. (See, e.g., *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54-55 [221 Cal.Rptr. 171] ("[B]efore an [insurer] can be found to have acted tortiously, i.e., in bad faith, in refusing to bestow policy benefits, it must have done so 'without proper cause' "); *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551, 557, disapproved on other grounds in *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 410-411 [257 Cal.Rptr. 292, 770 P.2d 704].)

A year before *Brandt* was decided, however, the Supreme Court rejected a plaintiff's argument that attorney's fees should be recoverable whenever the court finds that a defendant-fiduciary has committed fraud. In *Gray* v. *Don Miller & Associates, Inc.*, *supra*, 35 Cal.3d 498, the court mentioned the lower court cases which had allowed for the recovery of attorney's fees against insurance companies in bad faith actions but specifically declined to expand that doctrine to all fiduciaries. (*Id.* at p. 507, fn. 5.)

While *Gray* clearly reflects the Supreme Court's unwillingness to create a blanket "fiduciary fraud" exception to the American Rule, there may be reasons to conclude that lawyers belong in the same limited category with insurers, at least with respect to disputes over fees. ■ It is well settled that a lawyer who receives the proceeds of a judgment or settlement on behalf of a client holds those funds in trust and assumes the obligations of a trustee. (See Rules Prof. Conduct, rule 4-100; *Black* v. *State Bar* (1962) 57 Cal.2d 219, 226 [18 Cal.Rptr. 518, 368 P.2d 118]; *Blackmon* v. *Hale* (1970) 1 Cal.3d 548, 559 [83 Cal.Rptr. 194, 463 P.2d 418].) It is a similarly

established principle of common law that where the beneficiary of a trust is forced to defend his rights through litigation occasioned by the bad faith or unreasonable conduct of the trustee, the trustee may be required to reimburse the beneficiary for attorney's fees and costs incurred. (E.g., *Allard* v. *Pacific Nat. Bank* (1983) 99 Wn.2d 394 [663 P.2d 104, 112]; *Wolff* v. *Calla* (E.D.Pa. 1968) 288 F.Supp. 891, 894; *Wilmington Trust Company* v. *Coulter* (1965) 42 Del. Ch. 253 [208 A.2d 677, 682]; *In re Bausch's Estate* (1952) 280 A.D.2d 482 [115 N.Y.S.2d 278, 288]; see 76 Am.Jur.2d, Trusts, § 659, p. 870 ["Where litigation respecting an express trust was necessitated or occasioned by some fault or misconception of duty on the part of the trustee, the courts tend to impose any allowance made for costs or attorneys' fees upon the trustee individually"]; accord Annot., Allowance of Attorneys' Fees in, or Other Costs of, Litigation by Beneficiary Respecting Trust (1950) 9 A.L.R.2d 1132, 1243, § 31.) It would require but a short extension of this common law rule to hold that where a lawyer forces a client to litigate a fee dispute by adopting a position in bad faith, the client may recover the attorney's fees and costs expended in litigating the fee dispute either in the principal action or in a separate action for breach of fiduciary duty. The lawyer's position would be deemed in bad faith where no reasonable lawyer would have asserted it. Here, because the issue is unnecessary to our opinion, we do not decide whether Friedman Collard's continued assertion of an entitlement to $400,000 in fees was in bad faith, at least from the time our decision in *Schneider* v. *Kaiser Foundation Hospitals, supra,* 215 Cal.App.3d 1311 became final following the Supreme Court's denial of review.[6]

Interestingly, while the rule allowing the recovery of attorney's fees by a beneficiary against a trustee appears venerable and well settled, we have been unable to locate a single California case which has applied it. More

---

[6]Friedman Collard argues it did not act in bad faith because it did not take any *affirmative* steps to challenge our *Kaiser Hospitals* decision after it became final. In this context, the firm asserts an absolute right to defend the Sacramento judgment in the Third Appellate District by challenging the correctness of *Kaiser Hospitals*, noting that under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 456 [20 Cal.Rptr. 321, 369 P.2d 937], a court of equal jurisdiction is not bound by the doctrine of stare decisis.

Friedman Collard would be right if the correctness of the *Kaiser Hospitals* decision arose as an issue in a case involving a different party coincidentally represented by the Friedman firm. As the Third District's decision recognized, however, the question is not one of stare decisis but of issue preclusion when the identical parties are involved. Principles of collateral estoppel generally prevent a party from relitigating the same issue in separate actions in hope that one court might agree with it. We thus believe Friedman Collard was obligated to abandon its defense to the appeal in the *Sacramento Savings & Loan* case once the Supreme Court denied review in the *Kaiser Hospitals* action.

importantly, the Supreme Court's admonition to "move[] cautiously in expanding the nonstatutory bases on which awards of attorney's fees may be predicated" (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 636 [150 Cal.Rptr. 461, 586 P.2d 942]) indicates there are countervailing policy considerations.

For instance, the Legislature has established a procedure requiring attorneys to arbitrate fee disputes with clients at the client's option (see Bus. & Prof. Code, § 6200 et seq.), thus reducing the expense to the client. Where the dispute is not settled following arbitration (i.e., the winning party is forced to petition to confirm the award or the losing party requests a trial de novo), the prevailing party in the further proceedings may be entitled to an award of attorney's fees. (See Bus. & Prof. Code, §§ 6203, subd. (c) and 6204, subd. (d).)

In another arena, the United States Supreme Court has recently reaffirmed the inherent power of federal courts to award attorney's fees as sanctions for bad faith conduct by litigants and attorneys. (See *Chambers* v. *NASCO, Inc.* (1991) 501 U.S. __ [115 L.Ed.2d 27, 111 S.Ct. 2123].) The recognition of such an exception to the American Rule might allow for the award of some or all of the attorney's fees sought by the Schneiders in the underlying *Schneider* v. *Kaiser Foundation Hospitals* or *Sacramento Savings & Loan* actions.[7]

The existing statutory scheme for the resolution of attorney's fee disputes and the possibility that attorney's fees can be awarded for bad faith conduct in the underlying litigation may lessen the need to recognize an independent cause of action against attorneys for bad faith conduct in fee disputes with former clients. We are sensitive to the Supreme Court's concern with lawsuits which fail to settle disputes but instead spawn a brood of successive derivative suits. (See *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873 [254 Cal.Rptr. 336, 765 P.2d 498].) These considerations convince us we should not create a "lawyer-trustee" exception on our own. If such an expansion of current principles is to take place, it should be announced by the Supreme Court. ▉ Accordingly, because there is no California authority to support the award of attorney's fees and costs to a client under

---

[7]We assume that numerous state courts will now confront the issue of the extent to which their inherent powers allow for the award of attorney's fees as a sanction for bad faith conduct and that the question will be presented to California courts in due course. Although we express no view on whether the *Chambers* principles should apply in California, nothing in our opinion should be read to preclude the Schneiders from raising the issue before the respective trial courts in the *Schneider* v. *Kaiser Foundation Hospitals* or *Sacramento Savings & Loan* actions if they so choose.

the circumstances of this case, we must affirm the summary judgment in favor of Friedman Collard.

## DISPOSITION

Judgment affirmed. The parties are to bear their respective costs for this appeal.

Work, J., and Benke, J., concurred.

Petitions for a rehearing were denied August 29, 1991, and appellant's petition for review by the Supreme Court was denied October 24, 1991.