In the Matter of Duncan KINKEAD.

No. 53S00–9505–DI–508.

Supreme Court of Indiana.

Feb. 16, 1996.

Duncan Kinkead, pro se.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

The Disciplinary Commission charges that the respondent, Duncan Kinkead, improperly handled a client's funds and failed to adequately communicate with that client, in violation of several provisions of the *Rules of Professional Conduct for Attorneys at Law.* The Commission and the respondent offer for our approval a *Statement of Circumstances and Conditional Agreement for Discipline,* entered pursuant to Ind.Admission and Discipline Rule 23, Section 11. In that agreement, the parties agree to facts underlying this matter and that a public reprimand is an appropriate disciplinary sanction. The respondent is subject to this Court's jurisdiction in disciplinary cases by virtue of his admission to this state's bar in 1990.

Pursuant to the tendered agreement, the parties agree that a client retained the respondent on October 8, 1993, to pursue a worker's compensation claim against the client's employer. The client had incurred various medical bills, including one for $1,861.19, which was paid by Medicaid and memorialized as a lien against any future worker's compensation settlement proceeds. In addition, she owed $528 for medical rehabilitation services. That amount was also memorialized as a lien against any future settlement.

On October 11, 1994, the respondent negotiated a $5,400 worker's compensation settlement with the client's employer. He deposited his client's settlement check into his client trust account on November 4, 1994. He then issued two drafts against that account: one

for $1,395.90 toward the Medicaid lien, and another for $2,502 to his client. Thereafter, the respondent drew several checks on his trust account to pay personal creditors, but did not issue any check in satisfaction of the $528 lien for medical rehabilitation services. Also on November 4, 1994, the respondent transferred $528 from his client trust account to his business checking account.

On January 23, 1995, the client contacted the respondent to determine whether he had paid the lien for the rehabilitation services. After apparently learning that it had not been paid, she demanded that the respondent disburse the $528 to her. The respondent informed her that he could not give her that money because he had spent it on office rent. The balance in the respondent's business checking account that day was greater than $528 and he had not in fact used the settlement proceeds for his office rent. The respondent later acknowledged that he contrived the statement in order to gain time to confirm with the rehabilitation creditor that the $528 was payable to it and not to his client. On February 1, 1995, the respondent paid the rehabilitation creditor $528 with a check drawn against his business checking account.

■ In its *Verified Complaint for Disciplinary Action*, the Commission charged the respondent with violating Rules 1.4(a), 1.5(c), 1.15(a), 1.15(b), and 8.4(c) of the *Rules of Professional Conduct*.[1] We find that the respondent violated Ind.Professional Conduct Rule 1.4(a) by failing to inform his client that the medical rehabilitation creditor had not been paid and by attributing the lack of such payment to a claim that he had used the settlement funds for another purpose. Those acts constitute a failure to keep his client reasonably informed about the status of the case. His failure to provide his client with a written settlement statement at the conclusion of the representation violated Prof. Cond.R. 1.5(c). By transferring $528 of the settlement proceeds into his business checking account, the respondent violated Prof. Cond.R. 1.15(a) by failing to hold a client's property separate from his own. He violated Prof.Cond.R. 1.15(b) by failing to promptly notify or deliver funds to the rehabilitation creditor after having received funds on behalf of that creditor. His false statement to his client that he had used a portion of the settlement proceeds to pay his office rent represents conduct involving misrepresentation and thus violated Prof.Cond.R. 8.4(c).

The parties agree that a public reprimand is an appropriate discipline in this case, noting that the respondent is remorseful for his misconduct and that he has recently attended a professional enhancement educational semi-

---

1. Those rules provide:

Prof.Cond.R. 1.4(a): A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

Prof.Cond.R. 1.5(c): A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Prof.Cond.R. 1.15(a): A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representa-

tion separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which the client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Prof.Cond.R. 8.4(c): It is professional misconduct for a lawyer to:

. . . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

nar to assist him in better understanding the business aspects of the practice of law, and, specifically, the proper purpose, use and limitations of client trust accounts.

■ Well-recognized principles of client fund management require that lawyers treat client or third party money that comes into their custody with the care of a professional fiduciary. *In re Norman,* 659 N.E.2d 1046 (Ind.1996). *See also Comment* to Prof. Cond.R. 1.15. Failure to maintain a strict demarcation between a lawyer's property and that of a client or third party presents the appearance of impropriety, injects problems into the bookkeeping process, clouds the issue of who is entitled to the property, and makes safeguarding the property difficult or impossible. *See, e.g., Black v. California State Bar,* 57 Cal.2d 219, 18 Cal.Rptr. 518, 368 P.2d 118 (1962) (commingling subjects client funds to expenditure by the lawyer or attachment by the lawyer's creditors). In the present case, the respondent's transfer of a portion of the settlement proceeds into his business checking account brought with it some of the aforementioned risks. However, we are encouraged that the respondent has attended a professional enhancement seminar to bolster his understanding of client fund management. It is unfortunate that the seminar did not also focus on the importance of maintaining open channels of communication with clients and of maintaining truthfulness in such communications. However, given that the respondent's misconduct was an isolated occurrence and that he has taken steps to ensure that similar episodes of misconduct do not occur again, we approve this conditional agreement calling for a public reprimand. If not for the agreed resolution reached by the parties in this case, we may have been inclined to impose a more severe sanction.

It is, therefore, ordered that the respondent, Duncan Kinkead, is hereby reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against the respondent.