In re Walter CHOROSZEJ, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 90–SP–1607.

District of Columbia Court of Appeals.

Submitted June 12, 1991.
Decided Dec. 30, 1992.

*Roberts–Douglas I,* 624 A.2d at 425 (describing this court's efforts and enumerating the materials provided).

Before TERRY and WAGNER, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

This matter is before the Court on the Report and Recommendation of the Board on Professional Responsibility (the Board) that respondent be suspended from the practice of law for six months for violating Disciplinary Rules 9–103(A) (misappropriation of client funds), 9–103(A)(2) (commingling), and 9–103(B)(3) (failure to maintain complete records). The Board's report, which was based upon evidence adduced before a Hearing Committee (the Committee), affirmed all of the Committee's findings and conclusions except those concerning alleged violations of Disciplinary Rules 9–103(B)(4) (failure to pay client funds upon request) and 6–101(A)(3) (neglect). We accept the findings of fact and conclusions reached by the Board with the exception that we need not consider whether respondent violated Disciplinary Rule 9–103(A)(2) (commingling). The Board's recommended sanction, which took into account a commingling violation, is appropriate for the remaining violations, and consistent with sanctions for comparable misconduct in other cases. Accordingly, we adopt the Board's recommendation for sanctions.

I.

The pertinent facts as found by the Committee and adopted by the Board are as follows. As of November 1, 1986, respondent, a member of the District of Columbia Bar since 1965, had an association with Diamond Cab Company (the "company"), which provided respondent with office space and a secretary, who also served as respondent's office manager. In addition to defending suits against the company, respondent sometimes represented the company's drivers in personal injury cases on a contingent fee basis. Lewis J. Floris, a taxi driver with the company, retained respondent to represent him in a claim for damages for personal injuries Floris sustained as a result of a fall on property owned by Dupont East Condo Association.

Mr. Floris and respondent agreed that respondent would receive a contingent fee of one-third of any settlement and that Mr. Floris would receive the balance remaining after deduction for the attorney's fee and payment of any medical bills.

In early July 1987, the company terminated its association with respondent. After a brief transition period, the company ceased providing respondent with a secretary and office space. On July 8, 1987, State Farm General Insurance Company, the insurer for Dupont East, issued a check to "Lewis John Floris and Walter R. Choroszej, Attorney-at-Law" for $840 in partial settlement of Mr. Floris' claim. Respondent was to pay these funds to Dr. Jeffrey Goltz on behalf of his client.

Respondent and Mr. Floris endorsed the check, and respondent deposited it in his client trust account. On July 27, 1987, State Farm issued a second check to "Lewis John Floris and Walter R. Choroszej, Attorney-at-Law" for $750. Respondent also deposited this check in the same escrow account. Since the claim was so small and did not require litigation, respondent reduced his fee from $530 to $150, and on August 4, 1987, respondent issued Mr. Floris a check for $600, representing the client's share of the $750 check. Respondent told Mr. Floris that he would try to persuade Dr. Goltz to reduce his fee in order to increase the proceeds of settlement to Mr. Floris. Respondent had an arrangement with certain doctors, including Dr. Goltz, who agreed to defer payment of bills until settlement or verdict. During August 1987, respondent delivered to Mr. and Mrs. Floris an additional check for $250, which he explained represented the reduction in Dr. Goltz' fee. He assured Mrs. Floris that the doctor's bill had been paid. Although respondent genuinely believed that he had paid Dr. Goltz, apparently the doctor had not sent respondent the bill. Dr. Goltz began sending bills to Mr. and Mrs. Floris.

In March 1988, Mr. and Mrs. Floris called on respondent at his apartment concerning a different matter and showed him bills received from Dr. Goltz. Again, respon-

dent assured them that he had paid the doctor. Respondent called the doctor's office to inquire about the bill and was told by a staff person that the matter would be checked into and that they would get back to him. Respondent heard nothing further from the doctor's office, and respondent continued to hold an honest, but erroneous, belief that the doctor had been paid. At this time respondent believed that the client trust account contained only funds to which he was entitled as legal fees, and he wrote checks from the client trust account for rent and other personal expenses. The balance in the trust account dropped below the amount entrusted to respondent to cover Dr. Goltz' bill: $706.98 on August 10, 1987, and $206.98 on August 11, 1987. Respondent closed the account on September 15, 1987.

Respondent moved to Boston a short time later. Upon receiving another bill from the doctor in August and being unable to reach respondent, Mr. Floris complained to Bar Counsel. After being contacted by Bar Counsel, respondent paid Dr. Goltz $840. Respondent was unable to locate and produce financial records showing how he handled the settlement proceeds for this case. The Committee concluded that respondent's conduct was negligent and not dishonest.

## II.

### A. *Misappropriation*

■ The Board concluded that respondent violated Disciplinary Rule 9–103(A) (misappropriation) through negligence rather than dishonesty, when he reduced the client trust fund below the balance which was to be paid to the client's doctor. The finding and conclusion reached by the Board on this issue are supported by substantial evidence in the record; therefore, we accept them. *See* D.C.Bar R. XI, § 9(g); *see also In re Evans*, 578 A.2d 1141, 1142 (D.C.1990). We have adopted a definition for misappropriation as any unauthorized use by an attorney of a client's funds entrusted to him or her, whether or not temporary or for personal gain or benefit. *In re Harrison*, 461 A.2d 1034, 1036

(D.C.1983). Misappropriation is essentially a *per se* violation for which improper intent is not an element. *Id.; Evans*, 578 A.2d at 1142. Therefore, respondent's conduct, although inadvertent and negligent, violated Disciplinary Rule 9–103(A).

### B. *Failure to Maintain Complete Records*

■ We agree with the Board's conclusion that appellant violated Disciplinary Rule 9–103(B)(3), failure to maintain complete records. Its reasoning as set forth in its report, which we adopt, was as follows:

> Disciplinary Rule 9–103(B)(3) requires that an attorney maintain complete records of all client funds in his possession. Here, Respondent was unable to produce a ledger of the checks he wrote on the client trust account or bank statements and accounting records showing what was paid to or received from his clients. Respondent claims that his poor record-keeping was caused by his move from the District of Columbia to Boston. As the Hearing Committee correctly noted, "[a]lthough this fact may explain, it does not excuse [R]espondent's failure to keep records." Hrg.Com.Rpt. at 19. Accordingly, we concur in the Hearing Committee's conclusion that Respondent failed to maintain documentation on his clients' fund and thereby violated Disciplinary Rule 9–103(B)(3).

### C. *Sanctions*

■ We adopt the Board's recommendation that respondent be suspended for six months. Substantial evidence supports the Board's findings and conclusions that respondent violated Disciplinary Rules 9–103(A) (misappropriation of client funds) and 9–103(B)(3) (inadequate record-keeping) and that these violations resulted from simple negligence. While insufficient to defeat the charges, negligent conduct may temper the sanction imposed. *See In re Harrison, supra,* 461 A.2d at 1036. *In Harrison*, the attorney was suspended for a year and a day for inadvertent misappropriation and for commingling of client funds. *Id.* at 1035–36. However, other

actions by the attorney in *Harrison,* not present here, made a more severe sanction appropriate. These factors included the attorney's initial evasion of the client's request for restitution and payment by a check returned for insufficient funds. We agree with the Board that this case is more like *In re Evans, supra.* As the Board stated in its report:

> Respondent's violations are more akin to *In re Evans,* 578 A.2d 1141 (D.C.1990), where the Board, having concluded that the attorney unintentionally misappropriated the client's funds, imposed a six month suspension. In so holding, the Board noted that although there was no improper intent on the part of the attorney, he was more than "lax and casual" in his handling of the client's estate. "[H]e appeared insensitive to his fiduciary responsibilities and he violated those responsibilities." *Id.* at 1151. In Respondent's case, he too was insensitive to his fiduciary responsibilities. He was entrusted with his client's money to pay the client's doctor's bill. Through sloppy bookkeeping, respondent was not alerted to the fact that he never paid this obligation. From this inadvertent and negligent occurrence, a series of violations ensued.

There are also mitigating factors in respondent's case including respondent's full cooperation, lack of financial loss to the client, the fact that only a single incident was involved rather than a pattern of conduct, and other circumstances surrounding respondent's solo practice and lack of office staff at the time the infractions occurred. *See In re Hessler,* 549 A.2d 700, 716 (D.C.1988).

Therefore, it is ordered that respondent, Walter R. Choroszej, be suspended from the practice of law in the District of Columbia for a period of six months effective thirty days from the date of this order.

WAGNER, Associate Judge, concurring:

I concur in the decision of the court. I write separately to address another issue presented in this proceeding. The Board also concluded that respondent's conduct violated Disciplinary Rule 9–103(A)(2) (commingling). In my view, this important question is squarely presented and should be resolved. It is the history of violations which stands as the prior "record" of a lawyer in subsequent proceedings. *See In re Roundtree,* 467 A.2d 143, 148 (D.C.1983) (history of prior violations of Code of Professional Responsibility considered in determination of discipline). Therefore, whether the allegation has been proven is important not only to determining the appropriate sanction in the present case, but also to completeness of the record for any future disciplinary proceeding. Moreover, our review and disposition of findings of misconduct found by the Board provide guidance for attorneys' conduct and can reveal the need, if any, for revision of our rules.

I.

On the same facts recounted in the opinion, the Board concluded that respondent also violated the prohibition against commingling, the subject of Disciplinary Rule 9–103(A)(2). I disagree with the Board's conclusion on the particular facts of this case. Rule 9–103(A)(2) provides as follows:

> (A) All funds of clients paid to a lawyer or law firm other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
>
> \*     \*     \*     \*     \*     \*
>
> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

The Board concludes that a violation of this rule occurs whenever a lawyer, having deposited funds in a trust account consistent with the requirements of Disciplinary Rule 9–103(A)(2), removes the portion to which

he or she is entitled by writing a check for the amount to a creditor rather than by simply withdrawing the fee. There are no prior decisions in this jurisdiction holding that such actions violate the rule against commingling. Typically, our cases have considered the question only where an attorney improperly places a client's funds with his or her own funds causing the client's funds to lose their separate identity. *See, e.g., In re Hessler,* 549 A.2d 700, 701 (D.C.1988). In contrast, believing that only his fees remained in the account, Choroszej wrote checks for personal expenses from it. Since he exceeded the client funds for which he was responsible, he clearly violated the rule against misappropriation. Whether he violated the rule against commingling is also the issue raised by the Board's decision here.

The Board's position is that the rule covers the situation where an attorney properly deposits a fee in a trust account pursuant to the requirements of Disciplinary Rule 9–103(A)(2) and then writes a check on the account, even if only to the extent of the fee due, to someone other than himself. An interpretation of the rule which would preclude such actions, the Board reasons, furthers the objectives of the rule, *i.e.,* preserving the identity of client funds and preventing lawyers from misusing funds held in a client trust account, whether intentionally or inadvertently. I agree that these are important objectives of the rule against commingling, and we have so indicated in prior decisions.[1] However, in my opinion it would be inappropriate to extend the rule to include the situation involved in this case which is not one clearly within its ambit either by virtue of its plain meaning or prior interpretations. Moreover, it is covered adequately by other disciplinary rules. Disciplinary rules provide a guide for professional conduct, and the language of the rule under discussion does not alert members of the bar that earned fees properly on deposit in a trust account must be withdrawn in a particular manner or at a particular time. Violations of the disciplinary rules have serious consequences, and

members of the bar are entitled to be forewarned of the type of conduct which will be subject to sanction.

The sole basis for the Board's conclusion that respondent violated rules against misappropriation and commingling when he spent client funds from the client trust account seems to be that respondent believed the funds expended to be attorney fees to which he was entitled. Respondent's conduct violates the rule against misappropriation as we have defined it. Misappropriation is· " 'any unauthorized use of client's funds entrusted to him, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.' " *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983) (quoting *In re Wilson,* 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979)). Respondent's mistaken belief that the sums expended consisted only of attorney fees then due which had been properly deposited in the account does not convert the conduct to a commingling violation. In my opinion, such a conclusion would strain unnecessarily the definition of commingling to include conduct adequately covered by the rule against misappropriation.

Commingling involves placing client funds with the attorney's own funds so that the client's funds become more difficult to trace and are subjected to the risk of taking by the attorney's creditors. *Hessler, supra,* 549 A.2d at 702; *State v. Barrett,* 207 Kan. 178, 182, 483 P.2d 1106, 1110 (1971). The attorney fees placed into respondent's escrow account were properly placed there under Disciplinary Rule 9–103(A)(2). Therefore, commingling did not occur, in my opinion. Nevertheless, when the attorney expended client funds held in the escrow account, he violated the rule against misappropriation.

In California, where a lawyer can be sanctioned for failure to segregate his fee from a trust account within a reasonable time after becoming entitled to it, *Black v. State Bar of California,* 57 Cal.2d 219, 225, 18 Cal.Rptr. 518, 522, 368 P.2d 118,

---

1. *See, e.g., Hessler, supra,* 549 A.2d at 702.

122 (1962),[2] or for writing checks for personal convenience on a trust account to the extent covered by attorney fees properly on deposit, *Hamilton v. State Bar of California*, 23 Cal.3d 868, 873–75, 153 Cal.Rptr. 602, 604–05, 591 P.2d 1254, 1256–57 (1979), there is in effect a rule which requires that the portion of the trust account belonging to the lawyer " 'must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed.' " *Arm, supra*, note 2, 50 Cal.3d at 768 n. 3, 268 Cal.Rptr. at 742 n. 3, 789 P.2d at 923 n. 3 (quoting from former State Bar Rules of Professional Conduct 8–101(A), which in substance is consistent with its Rule 4–100(A)). This rule serves as notice to members of the profession in California that attorney fees cannot be allowed to remain in the client trust account for future disposition at the convenience of the attorney. Absent a comparable rule, in my opinion, it is inappropriate to extend Rule 9–103(A)(2) to cover the situation involved in this case.

Moreover, I am persuaded that the dangers implicit in the circumstance presented here are addressed adequately through other applicable rules. Preserving the identity of client funds and preventing their misuse when held in a trust account with other funds pursuant to the disciplinary rule can be assured, *inter alia*, by the lawyer's adherence to the requirements of Disciplinary Rules 9–103(A) (misappropriation) and 9–103(B)(3) (maintenance of complete records of client funds).[3] Had respondent maintained records in compliance with Rule 9–103(B)(3), he would have realized that his expenditures exceeded the fees to which he was entitled, which fees had been deposited properly as a part of the single check payable to the lawyer and client, and that his client's physician had not been paid. Our

rule against misappropriation of client funds serves as a deterrent to a lawyer's mishandling of client funds on deposit with the lawyer's funds under Rule 9–103(A)(2). Members of the bar are on notice that the rule against misappropriation of client funds is violated even when funds belonging to the client are expended because of mere negligence. *In re Evans*, 578 A.2d 1141, 1142 (D.C.1990); *Harrison, supra*, 461 A.2d at 1036; *see also Hessler, supra*, 549 A.2d at 700 n. 3. Where as here, the deterrent effect fails to prevent the improper expenditure of client funds on deposit with counsel fees pursuant to Rule 9–103(A)(2), a violation of the rule against misappropriation occurs, as the Board found here, and results in the imposition of a sanction.

Although the foregoing considerations dictate a result contrary to the one reached by the Board on the issue of commingling, I hasten to add that continuous use of a client trust account for personal purposes may result in a loss of the identity of client funds. Our rules require not only that the client funds not be mingled with those of the attorney, but also that their identity be preserved. Use of the trust account for payment of personal expenses, even if covered by attorney fees of the lawyer properly deposited may, under certain circumstances, result in the loss of identity between the funds due lawyer and client. Such circumstances may result in a violation of the rule. Therefore, in my view, members of the bar should remove promptly any fees undisputedly due them which are held in a trust account under Disciplinary Rule 9–103(A). Lawyers who write checks for personal expenses on a client trust account, although covered by fees due them and properly on deposit, do so at

---

**2.** In *Black,* the court dismissed the commingling charge because members of the bar had not been notified previously of the interpretation adopted. *Black,* 57 Cal.2d at 226, 18 Cal.Rptr. at 523, 368 P.2d at 123. The situation has been covered subsequently by an explicit rule. *See Arm v. State Bar of California,* 50 Cal.3d 763, 768 n. 3, 268 Cal.Rptr. 741, 742 n. 3., 789 P.2d 922, 923 n. 3 (1990).

**3.** *See also* Disciplinary Rules 9–103(B)(4) (directing a lawyer to pay or deliver promptly funds in the lawyer's possession to which the client is entitled) and 7–101(A)(1) (requiring a lawyer to seek the client's lawful objectives).

the risk of violation of local disciplinary rules.