**In re Janai C. REED, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 95–BG–1545.

District of Columbia Court of Appeals.

Argued June 7, 1996.

Decided July 11, 1996.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Barry E. Cohen, Special Counsel to the Board on Professional Responsibility.

John A. Shorter, Washington, DC, with whom Robert Bredhoff was on the brief, for respondent.

Before KING and REID, Associate Judges, and KERN, Senior Judge.

PER CURIAM.

Bar Counsel charged respondent, an attorney admitted to practice law in the District of Columbia, with negligent misappropriation of client funds and failing to deliver funds promptly, in violation of Rules 1.15(a) and (b) of the Rules of Professional Conduct (client property to be kept in separate account). The hearing committee concluded that respondent had engaged in misappropriation of

client funds held in trust by simple negligence, and had failed to promptly pay such funds to a third party. It recommended a six-month suspension. The Board on Professional Responsibility ("Board") accepted the hearing committee's findings on the two violations and its recommendation of a six-month suspension from the practice of law, but recommended that the suspension be held in abeyance for two years while respondent serve an unmonitored probation.

This matter is before the court on Bar Counsel's exception to that part of the Board's report recommending that the six-month suspension be held in abeyance. Neither Bar Counsel nor respondent challenges the findings on the underlying violations. The Board recommended probation instead of an immediate six-month suspension because of the unchallenged hearing committee findings that: (1) this was respondent's first disciplinary proceeding of record; (2) the misconduct was limited to the one instance of inadvertent misappropriation, with no other ethical violations; (3) the misconduct occurred less than three years after respondent began the practice of law and in her very first personal injury case; (4) respondent was a sole practitioner who could not afford clerical assistance other than typing assistance; (5) the unpaid funds owed were paid as soon as respondent learned they were still due; and (6) respondent cooperated fully with Bar Counsel in its investigation of her conduct. The Board acknowledges that its recommendation of probation for negligent misappropriation is more lenient than the sanction imposed in prior cases of misappropriation, but it has made its recommendation as an "exercis[e] [of its] ... broad discretion in handing out discipline," *see Matter of Smith*, 403 A.2d 296, 303 (D.C.1979), and that the above noted factors present "extensive mitigating circumstances." We agree with the Board that the disciplinary system should be flexible enough to accommodate alternative sanctions in cases where there are mitigating circumstances. *In re Stow*, 633 A.2d 782, 785–86 (D.C.1993). We disagree, however, that those circumstances are sufficiently present in respondent's case to justify a sanction other than a period of suspension. Therefore, we order the six-month suspension recommended by the Bar Counsel.

I.

Respondent became a sole practitioner shortly after her admission by examination to the Bar of the District of Columbia Court of Appeals on September 22, 1989. Respondent, who primarily represented criminal defendants, agreed to handle her first personal injury case for a friend, Hedy L. Talbot, on May 23, 1991. The written retainer agreement provided that respondent would receive a contingency fee of thirty-three and one-third percent if the case was settled, and a forty percent contingency fee if a suit was filed. Thereafter, respondent and Talbot entered into an agreement with Dr. Hamilton Jackson, by which Jackson's bill for Talbot's treatment would be paid from the proceeds of any recovery. Negotiations for settlement then commenced. Because of Talbot's delay in accepting the proposed settlement, respondent filed a complaint to avoid statute of limitations problems.

In January 1993 the case was settled for $3,600. Respondent and her client endorsed the settlement check and respondent deposited it in her escrow account, which had a zero balance prior to the deposit, at the Industrial Bank of Washington ("Bank"). Because the final settlement amount was relatively small, respondent reduced her fee to one-third of recovery, $1,199.88 [1] A settlement/disbursement sheet showed that the disbursements were to be paid as follows: 1) $1,199.88 to respondent; 2) $435 to Dr. Jackson; 3) $110 to a Dr. James; and 4) $1855.12 to the client.

On or about February 16, 1993, respondent drew a check on the escrow account for $1,199.88 payable to herself. She also purchased a cashier's check payable to Talbot for the amount due her and Dr. James was also paid the amount specified on the settlement sheet. This left a balance of $435, the exact amount owed to Dr. Jackson. Respon-

---

**1.** The record is silent concerning the 12 cents deducted from $1200, which is exactly one-third of the settlement amount.

dent, however, did not pay Dr. Jackson any amount. Thereafter, the bank debited $100 against the escrow account for a check for an unknown payee. On February 25, respondent cashed an escrow account check payable to cash for $50. On March 7, 1993, she wrote a check, on the escrow account, payable to Shopper's Food Warehouse for $91.35. Another check payable to cash was debited from the account on March 23, 1993, leaving a balance of $96.65, considerably less than the amount owed to Dr. Jackson.

After the client received a letter in December 1993 demanding payment of Dr. Jackson's bill, she filed a complaint against respondent with Bar Counsel. Respondent testified before the hearing committee that she thought she had paid Dr. Jackson and was completely surprised upon receiving Bar Counsel's letter indicating otherwise. After checking with the bank and discovering no record of the payment, respondent purchased a money order for $435.00 and mailed it to Dr. Jackson's attorney.

Finding that a negligent misappropriation had been established, the hearing committee recommended a six-month suspension. The Board, however, concluded that probation was a more appropriate sanction than the six-month suspension ordinarily imposed for attorneys who commit an inadvertent misappropriation of client funds. The Board and Bar Counsel both agree on the underlying facts—that respondent engaged in misappropriation of client funds when she allowed the balance in her client trust account to fall below an amount owed to a third party—and that six months is the appropriate period of suspension for this misconduct. They disagree only on whether the suspension should be served or held in abeyance during a period of probation. Respondent agrees with the Board.

## II.

■ Bar Counsel does not contend that this misappropriation was other than inadvertent, and we accept that characterization of what occurred here. However, improper intent is not an element of misappropriation. *See In re Choroszej,* 624 A.2d 434, 436 (D.C. 1992). Once respondent's escrow account fell below the amount held in trust for Talbot, misappropriation occurred, *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983), and any misappropriation is essentially a per se violation of Rule 1.15. *See Choroszej, supra,* 624 A.2d at 436. Although by establishing inadvertence a respondent can avoid the more serious sanction of disbarment, *see Harrison, supra,* 461 A.2d at 1036, members of the bar are on notice of the seriousness with which this court regards an attorney's duty to properly care for funds belonging to the client. *See, e.g., In re Evans,* 578 A.2d 1141, 1142 (D.C.1990) (imposing six-month suspension for misappropriation without dishonest intent); *In re Hessler,* 549 A.2d 700, 703 (D.C. 1988) (imposing six-month suspension for unintentional misappropriation). "As far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally [misappropriated.]" *See Hessler, supra,* 549 A.2d at 702.

The Board has recommended that a six-month suspension be imposed but that the suspension be held in abeyance during a two-year period of probation. The governing rule provides that we should adopt the Board's recommended disposition unless to do so would foster a tendency toward inconsistent disposition for comparable conduct or would otherwise be unwarranted. D.C.App. R. XI § 9(g)(1) (1995). Because the Board's recommendation here is itself a departure from an unbroken line of cases in which an actual suspension of at least six months has been imposed for the same conduct, and there are insufficient mitigating factors to justify such departure, we do not accept the Board's recommendation. *See, e.g., Choroszej, supra,* 624 A.2d at 436 (six-month suspension imposed); *Evans, supra,* 578 A.2d at 1142 (same): *Hessler, supra,* 549 A.2d at 703 (same).

It may be that, under certain circumstances, in light of the inexperience of counsel and the other factors relied upon by the Board, holding a suspension in abeyance for this kind of violation might be appropriate. We neither endorse nor reject such a course, and we will always give due consideration to any such recommendation, as we have in this

case. We are unwilling to take that step here, however, because we are troubled by respondent's failure to explain the circumstances relating to the three or four other checks drawn on the client's escrow account for respondent's own use.

Respondent deposited the settlement check in an escrow account, then wrote checks to herself, Talbot, and Dr. James. No additional funds were added to the account. Therefore, if Dr. Jackson had been paid the amount due him, the funds in the account would have been exhausted, *i.e.*, the balance would have been zero. Notwithstanding, respondent continued to draw on the escrow account for her personal use. Significantly, she could not explain the purpose for which the money drawn was spent. For example, she could not recollect endorsing a $50 check made payable to cash and she offered no explanation concerning how the money was used. Nor did she recall anything about a check payable to cash for $150 which she also endorsed.[2] A little more than a month after the escrow account was opened, there was yet another unexplained $100 debit. Respondent's testimony revealed that her accounting practices were practically non-existent and careless at best. She did not keep a running balance, her check ledger had no memos, and she did not keep track of the funds. In fact, she did not always open the monthly statements on the account that were sent to her by the bank.

The circumstances of respondent's failure to maintain adequate records is virtually indistinguishable from what occurred in *Choroszej, supra,* 624 A.2d at 436–37, where the negligent misappropriation of client funds and inadequate record keeping resulted in the imposition of a six-month suspension. In fact, most of the mitigating factors that were present here—a single incident, lack of support staff, and the respondent's full cooperation—were present there as well. Even though respondent's inexperience distinguishes her from the attorney in *In re Choroszej,* the fact of inexperience does not alter the nature of the fiduciary duty an attorney owes to the client, especially where, as here, respondent drew upon the account for her own, albeit unexplained, purposes. Nor does inexperience excuse the failure to abide by the record-keeping requirement imposed by Rule 1.15(a) (complete records of client or third-party funds to be kept by the lawyer and preserved for five years after representation). For all these reasons, we hold that respondent's violation of Rules 1.15(a) and (b) of the District of Columbia Rules of Professional Conduct, under the circumstances presented here, warrants the serving of a suspension of six months. Therefore, it is

ORDERED that respondent, Janai C. Reed, be suspended from the practice of law in the District of Columbia for a period of six months, effective thirty days from the date of this order.

*So Ordered.*

---

**2.** Respondent's only explanation was that, perhaps, she reimbursed herself for the filing fee in the suit. However, at the time she drew up the disbursement/settlement statement, she did not make any claim for reimbursement of expenses.