**In re Daniel S. CHANG, Respondent.**

**A Member of the Bar of the District of Columbia.**

**No 96–BG–1005.**

District of Columbia Court of Appeals.

Argued April 22, 1997.

Decided May 22, 1997.

Before SCHWELB, FARRELL and REID, Associate Judges.

PER CURIAM.

In its Report and Recommendation, which is attached hereto and made a part hereof, the Board on Professional Responsibility has recommended that Daniel S. Chang, Esq., a member of the bar of this court, be suspended from practice for six months for commingling and unintentional misappropriation. Chang contends before this court that the

recommended discipline is too harsh, and he urges the court to issue a suspension of thirty days, as recommended by the Hearing Committee.

Under the provisions of D.C. Bar. XI § 9(g) (1996), we are required to adopt the recommended disposition of the Board "unless to do so would foster a tendency towards inconsistent dispositions for comparable conduct or would otherwise be unwarranted." Although Chang's prior record is spotless, and although he has made an impressive presentation of mitigating factors, we are compelled to conclude that, under our precedents, these factors are not sufficient to permit us to impose more lenient discipline. *See, e.g., In re Reed,* 679 A.2d 506, 508–09 (D.C.1996) (per curiam); *In re Hessler,* 549 A.2d 700, 703 (D.C.1988); *In re Choroszej,* 624 A.2d 434, 436 (D.C.1992) (per curiam). Accordingly, and substantially for the reasons stated by the Board, Chang is hereby suspended from the practice of law in the District of Columbia for six months, effective thirty days from the entry of this order. We direct Chang's attention to Section 14 of D.C. Bar R. XI, governing suspended attorneys.

*So ordered.*[1]

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of:

DANIEL S. CHANG,

Respondent.

Bar Docket No. 389–92

*REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

### I.  *Introduction*

Daniel S. Chang, a member of the Bar of the District of Columbia, was charged by Bar Counsel with commingling and misappropriation, in violation of Rule 1.15(a) of the District of Columbia Rules of Professional Conduct. Hearing Committee Number Nine found that Respondent committed the violations charged and that Respondent's misappropriation was the result of simple negligence. The Hearing Committee recommended a one-month suspension, and that Respondent remain suspended until he demonstrates that he has implemented a viable bookkeeping system (preferably computerized) for his escrow funds. Bar Counsel has excepted to the Hearing Committee's proposed sanction and argues that Respondent should be suspended for six months. Respondent has asked that the Board adopt the one-month suspension recommended by the Hearing Committee.

We find that Bar Counsel proved by clear and convincing evidence that Respondent commingled and misappropriated client funds in violation of Rule 1.15(a). We also agree with Bar Counsel and the Hearing Committee that Respondent's action was the product of no more than simple negligence. However, we differ with the Hearing Committee concerning the appropriate sanction and recommend instead that Respondent be suspended for six months.

### II.  *Statement of Facts*

Respondent is a solo practitioner who has practiced law in the District of Columbia since 1978. Tr. 24–25.[2] Respondent primarily serves members of the Chinese communi-

---

1.  Judge Schwelb believes that if this case were one of first impression, the sanction would be too harsh. The violation resulted from simple negligence, and the likelihood of recurrence is minimal. Judge Schwelb joins the opinion and judgment of the court, however, in light of our precedents and the deferential standard of review.

Judge Farrell believes that for the Board to have accepted the Hearing Committee's recommendation of a thirty-day suspension, besides being inconsistent with our precedents, would have understated the seriousness of the conduct by respondent (an experienced attorney), who, in the Board's words, "deposited fees from real estate settlements into his escrow account and wrote checks on the account to cover personal and business expenses."

2.  The transcript of the May 4, 1994 hearing is referred to as "Tr." Bar Counsel's exhibits are referred to as "Bar ex."

ty in real estate, business transactions and immigration matters, and devotes meaningful portions of his time to *pro bono* activities for local Asian–Americans. Tr. 29, 69, 74.

The commingling and misappropriation before the Board were brought to Bar Counsel's attention pursuant to an overdraft notification concerning Respondent's escrow account at Crestar Bank ("the account"). Crestar reported the overdraft to Bar Counsel in August 1992, when an overdrawn check payable to the order of Bryan Lee ("Lee check") in the amount of $1,000 was held for insufficient funds. Bar Ex. 5, 7. Bar Counsel also received a second overdraft notification concerning a $2,000 check written on the account to the order of Wai C. Chang ("Wang check"). *Id.*[3]

Respondent cooperated fully in Bar Counsel's investigation. Tr. 7. He admitted that he maintained earned fees from real estate and other transactions in the account and that he wrote some checks on the account for non client matters, such as rent and payroll. Tr. 33–34; Bar ex. 4, 8. Respondent kept no written record of his earned fees and acknowledged that he "didn't keep track [of his fees] very well." Tr. 34.

Respondent's explanation of the misappropriation, credited by the Hearing Committee and characterized by Bar Counsel as "entirely credible," (Tr. 96) was as follows. On or about July 31, 1992, Respondent settled a real estate transaction for $890,000 for property located at 9900 Scotch Broom Court in Potomac, Maryland, where the purchaser was his brother. Tr. 36–37, 39, 42; Bar ex. 6. The transaction drove the balance in Respondent's escrow account to over $900,000, higher than it had ever been. Tr. 36–37, 46; Bar ex. 1.

On Friday afternoon, August 7, 1992, Respondent went to the Recorder of Deeds in Montgomery County, Maryland, to record the deed and deed of trust for the property. Tr. 42. At the time, there were sufficient funds earmarked to cover the recordation costs. Bar ex. 1. However, Respondent did not collect from his brother and place in escrow funds necessary to pay property taxes for the property, because he thought that they would not come due until September 31, 1992. Tr. 42.

When Respondent was told that he had to pay the property taxes in order to record the deed and deed of trust, he paid the taxes from the escrow account, mistakenly believing that he had sufficient earned fees in the account to cover the $8,013.77 tax payment. *Id*; Bar ex. 7. Respondent explained,

> I thought I have enough money to cover $8,000, otherwise I wouldn't record. I was cautious before. I normally won't do it for sure because of my brother, because of the Friday and everything goes wrong, I just record it. I just go ahead and record it. I thought I have enough money at that time.

Tr. 43. Respondent did not return to his office that day nor did he deposit funds from his brother to cover the tax payment. Respondent testified that it occurred to him that he should have called his brother, but that he did not. Rather, he became involved in preparing to leave the following Sunday, August 9, on a four day family vacation to Florida. Tr. 58–59; Bar ex. 6.

On August 14, 1992, the balance in the account dwindled to $240.63, and the Lee and Wang checks were returned for insufficient funds. Bar ex. 5, 6, 7. At the time, other clients had claims on the funds in the account in excess of the account balance. Bar ex. B at 2–3; Bar ex C at 1. On August 18, 1992, after Respondent's return from vacation and upon notification by the bank of the returned

---

**3.** The Hearing Committee did not make detailed findings of fact concerning the transaction that underlies its finding of negligent misappropriation. The Board believes that consideration of the details of that transaction is necessary to a full evaluation of the appropriate sanction. Therefore, the Board has proceeded, pursuant to Board Rule 13.6, to make additional findings of fact, which are uncontested on this record and supported by clear and convincing evidence.

checks, Respondent replenished the account with his personal funds. On August 25, 1992, the Lee check was honored, and the Wang check was honored on August 26. Tr. 53–56; Bar ex. 1, 6.

## III. *Disciplinary Violations*

### A. *Commingling.*

Rule 1.15(a) provides "a lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with the representation separate from the lawyer's own property." Commingling occurs whenever a lawyer fails to segregate his or her own funds from those of a client, or when the lawyer is unable to identify the lawyer's funds from those of a client. *In re Choroszej*, 624 A.2d 434, 438 (D.C.1992) (Wagner, J., concurring).

Here, Respondent admitted that he deposited fees from real estate settlements into his escrow account and wrote checks on the account to cover personal and business expenses, and the documentary evidence supported his testimony. We therefore find that the Hearing Committee correctly concluded that Respondent committed commingling in violation of Rule 1.15(a).

### B. *Misappropriation*

While Rule 1.15(a) does not explicitly mention the term misappropriation, case law establishes that where an attorney pays to himself client funds entrusted to him, he has committed misappropriation in violation of the rule. Misappropriation has been defined as "any unauthorized use of [a] client's funds entrusted to [the attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983), quoting *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979); *see In re Ray*, 675 A.2d 1381 (D.C.1996); *In re Pels*, 653 A.2d 388, 393–94 (D.C.1995). Misappropriation is a *per se* offense, and improper intent need not be shown. *See In re Harrison, supra*, 461 A.2d

at 1036; *In re Ray, supra*, 675 A.2d at 1386; *In re Pels, supra*, 653 A.2d at 394.

We agree with the Hearing Committee's finding that when the balance in Respondent's escrow account dipped below the amount owed Respondent's clients, misappropriation occurred. *See In re Pels, supra*, 653 A.2d at 394 (citations omitted). Respondent does not contest this finding, but rather has admitted that his conduct amounted to a "technical misappropriation." Respondent's brief at 2. We also agree with Bar Counsel and the Hearing Committee that the misappropriation was the result of simple negligence. The Hearing Committee, which had the opportunity to assess Respondent's demeanor, expressly credited Respondent's testimony that he believed he had sufficient earned fees in the account to cover the property taxes he paid on his brother's behalf. The Board owes the Hearing Committee's credibility findings deference, and the finding of simple negligence even greater deference because it is not challenged by Bar Counsel. *See In re Ray, supra*, 675 A.2d at 1388. The Board accordingly finds that Respondent engaged in negligent misappropriation, in violation of Rule 1.15(a).

### Sanction

In this jurisdiction, the sanction for misappropriation, other than misappropriation that results from no more than simple negligence, is disbarment. *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc); *see In re Ray*, 675 A.2d at 1387; *In re Pels*, 653 A.2d at 388–89. Where misappropriation results from no more than simple negligence or its equivalent, the Court of Appeals has imposed a suspension for a period of six months. *See In re Reed*, 679 A.2d 506 (D.C.1996); *In re Ray, supra; In re Choroszej, supra; In re Cooper*, 613 A.2d 938 (D.C.1992) (en banc); *In re Evans*, 578 A.2d 1141 (D.C.1990); *In re Hessler*, 549 A.2d 700 (D.C.1988).

In *In re Hessler, supra*, the respondent commingled his client funds with his own funds, paid his personal bills from the commingled account and, on numerous occasions, allowed the account balance to dip below the amount owed to his clients. The Court found respondent's conduct to constitute "simple

negligence, but no more" and imposed a six month suspension. *Id.* at 701.

In *In re Evans, supra,* the respondent was charged with negligent misappropriation along with violations stemming from payment to himself of an allegedly unauthorized attorney fee out an estate he was handling. Based on findings that respondent had an "objectively reasonable, albeit erroneous, belief that his actions were proper," the Court imposed a six-month suspension. 578 A.2d at 1142.

In *In re Cooper, supra,* the respondent was found to have engaged in negligent misappropriation and was suspended for six months where he used a client escrow account established to receive proceeds of his client's personal injury settlement as his personal checking account. The Court affirmed a Board finding that respondent's failure to understand the true state of his authority, in what amounted to a family feud, involved "simple negligence or its equivalent" and suspended respondent for six months. 613 A.2d at 939.[4]

In *In re Ray, supra,* the Court imposed a six-month suspension for negligent misappropriation where the respondent, who was unaware that he could not accept estate funds as fees without court permission, sold securities belonging to the estate, deposited the proceeds into his escrow account and retained part as his legal fee.

Of the negligent misappropriation cases decided by the Court, the closest to the instant case are *Choroszej* and *Reed.* In *Choroszej,* respondent, a solo practitioner, wrote personal checks on his client trust account, believing that it contained only funds to which he was entitled as legal fees. When he discovered that he had mistakenly failed to pay outstanding medical bills out of funds he had retained for that purpose from a client's settlement, he immediately made payment. In imposing a six-month suspension, the Court noted a number of mitigating factors, including "respondent's full coopera-

tion, lack of financial loss to the client, the fact that only a single incident was involved rather than a pattern of conduct, and other circumstances surrounding respondent's solo practice and lack of office staff at the time the infractions occurred." *Id.* at 437.

In *In re Reed, supra,* the Court recently imposed a six-month suspension for negligent misappropriation. The respondent, a solo practitioner who primarily represented criminal defendants, and whose accounting practices were "practically non-existent and careless at best," negligently misappropriated funds received from settlement of her first personal injury case. The respondent mistakenly believed she had paid a physician from the proceeds of the settlement, when in fact the doctor's bill was outstanding. Mitigating factors included the fact that the misconduct arose from a single incident, respondent's lack of a support staff and her "full cooperation" with the disciplinary process. 679 A.2d at 509. While noting that under certain circumstances, "the inexperience of counsel and the other factors relied upon by the Board" might justify the imposition of probation, which was recommended by the Board, the Court was troubled by respondent's failure to explain the circumstances surrounding the misappropriation. 679 A.2d at 508.

Respondent has presented considerable mitigation here. His cooperation in Bar Counsel's investigation was exemplary. As Senior Assistant Bar Counsel explained to the Hearing Committee, "We know what we know about the operation of Mr. Chang's escrow account during the period in question because of the very full and outstanding cooperation he provided this office." Tr. 7. Respondent particularly impressed the Hearing Committee with his candor. Hearing Committee Report at 2. This case also was not opened pursuant to a client complaint, but was based on an overdraft notification from Crestar Bank. The fact that a client did not complain about Respondent is a relevant factor in considering the appropriate sanction. *See In re Ray,* 675 A.2d at 1388 n.

4. The Court also considered respondent's cocaine addiction and added a fitness requirement to the sanction.

6. Respondent also promptly replenished the account when he learned of his error. In addition, as the Hearing Committee noted, Respondent has established a record of integrity and *pro bono* legal service to the Asian American community.

Despite these mitigating factors, we have concluded that we cannot adopt the 30–day suspension recommended by the Hearing Committee. In particular, we find that Respondent's misconduct cannot be distinguished from the conduct of the respondents in *Choroszej* and *Reed*, in a way that the Board could justify a lesser sanction. Nor are the mitigating factors sufficiently more compelling than the mitigation in those cases to warrant a departure from the unbroken line of cases that have imposed six-month suspensions for the same misconduct.[5] We therefore recommend that the Court suspend Respondent for six months for his violation of Rule 1.15(a).

BOARD ON PROFESSIONAL RESPONSIBILITY

BY: /s/

    Johnny M. Howard

Dated: ————————

All members of the Board concur in this Report and Recommendation.

---

5. Unlike the respondent in *Reed*, Respondent did provide a full explanation of the circumstances surrounding his misconduct. The Board finds this distinction insufficient to justify a lesser sanction, particularly in light of the fact that Respondent is an experienced attorney, while Reed was relatively new to the practice of law at the time of her misconduct.