No. 46,160

STATE OF KANSAS, *Petitioner*, v. RICHARD L. BARRETT, attorney, *Respondent*.

(483 P. 2d 1106)

Opinion filed April 10, 1971.

*Edward G. Collister, Jr.*, Assistant Attorney General, argued the cause and *Vern Miller*, Attorney General, was with him on the brief for the petitioner.

*Paul R. Wunsch*, of Kingman, argued the cause and was on the brief for respondent.

*Per Curiam:* This is an original proceeding in discipline against the respondent, Richard L. Barrett, of Pratt, Kansas, in which the State Board of Law Examiners has recommended disbarment.

Complaint was lodged with the State Board of Law Examiners by eight members of the Pratt County Bar Association. After investigation and hearing the State Board of Law Examiners filed its report, findings and recommendation of disbarment.

The instant proceeding was filed and docketed under Rule No. 206 of the Supreme Court (205 Kan. LXII). Respondent, Richard L. Barrett, filed exceptions to the report of the State Board of Law Examiners. The matter was briefed and argued, and it now becomes our duty to examine the record and determine the judgment to be rendered. Our authority and duty in this regard was set forth in the case of *In re Phelps*, 204 Kan. 16, 459 P. 2d 172, cert. den. 397 U. S. 916, 25 L. Ed. 2d 97, 90 S. Ct. 922; as follows:

"Under the statute (K. S. A. 7-111) an attorney may be disbarred or suspended for the grounds enumerated, which include willful violation of his oath or of any duty imposed upon him as an attorney at law. The bases for revocation or suspension of an attorney's license to practice, however, are not restricted to those of the statute. Serious infractions of the Canons of Professional Ethics adopted by the American Bar Association are also grounds for invoking disciplinary measures against offending lawyers. We have said that this court has inherent authority to discipline members of the bar of this state whenever their conduct substantially fails to conform to the ethical standards prescribed for the legal profession, or whenever their activities become otherwise inimical to the just and orderly administration of law. [Citation omitted.]" (p. 17.)

The respondent was admitted to practice law in the year 1950 and has continued to practice at Pratt, Kansas, since that date.

He was present and testified at the hearing before the State Board of Law Examiners. Neither by his testimony nor by his exceptions to the report of the board does he dispute the material facts found by the board and set forth in their report. Respondent is doing business under the firm name of Barrett and Barrett, Attorneys. His father with whom he practiced died in 1960. Respondent thereafter has practiced law under the style of Barrett and Barrett, Attorneys.

The complaint in this proceeding involves two separate business transactions which respondent undertook for clients.

The first arose from a sale of $20,000 worth of real estate. Respondent drew a contract of sale dated October 7, 1968, which provided for the escrow of title documents and for payment of the purchase price. The purchase price was to be remitted promptly by respondent to the sellers when received. Respondent was designated as escrow agent in the contract and as such received two payments on the sale price. The first payment of $4,000 was received on October 17, 1968. This check was either cashed or deposited at the Greensburg State Bank on October 18, 1968, after being endorsed by respondent. On December 30, 1968, respondent received a second check as escrow agent in the amount of $5,157.50. On this same date respondent issued a check to the seller of the real estate covering only the $4,000 payment less sale expenses. Payment was refused on this check because of insufficient funds in the account.

Respondent had maintained a checking account in the Peoples Bank of Pratt, Kansas, which was designated as a trust account of Barrett and Barrett, Attorneys. The insufficient fund check was drawn on this account. The $5,157.50 check received by respondent was not deposited for some time. It was held by him for two months until February 27, 1969, at which time it was deposited in this trust account.

On March 4, 1969, the Peoples Bank of Pratt refused payment of an unrelated check drawn by respondent on this trust account in the sum of $14,743.50 and payable to a bank in St. Louis, Missouri. The trust account had insufficient funds to cover the check. The check had been given to satisfy an unconnected escrow obligation of the respondent. Two days later the respondent deposited $9,085.78 in the trust account and re-issued the $14,743.50 check to the St. Louis bank. The $9,085.78 deposit was made up of $2,000 in currency, $4,500 which was transferred from the

Barrett and Barrett, Attorneys, account in the Greensburg State Bank and a check for $2,585.78 received from another client. When the second check to the St. Louis bank was paid the trust account was reduced to a balance of $726.10.

Thereafter respondent issued a check for $5,157.50 payable to the seller named in the escrow agreement. On April 8, 1969, in response to a demand by the seller's attorney in Arkansas for payment of the $4,000 item, respondent took $5,000 in currency from his office safe and drove to Arkansas. He paid his obligation under the $4,000 payment in currency and returned to Pratt. Shortly thereafter demand was made upon him for the $5,157.50 payment. No payment was forthcoming and a suit was filed May 16, 1969, to recover this amount and to terminate his duties as escrow agent under the contract.

On July 3, 1969, a formal complaint was filed with the Kansas State Board of Law Examiners based upon his handling of the funds arising from the escrow agreement and upon his failure to carry out other duties as executor of an estate in the Probate Court of Pratt County, Kansas.

The suit against respondent to recover the $5,157.50 was settled on July 25, 1969, with funds obtained from a real estate loan on his personal real estate. He was relieved of all further duties as escrow agent under the contract.

The second matter called to the attention of the board arose from respondent's handling of the assets of what we will refer to as the Samples estate. He was appointed executor of the Samples will without bond on November 30, 1962. The estate consisted of roughly $71,000 in liquid assets such as cash in banks, savings and loan shares, mutual funds, Kansas Power and Light Company stock and real estate which was sold and payment received in full on or before March 18, 1966. At this time the estate was ready to close.

After many letters and calls from the heirs to respondent and after an informal complaint was made to the Kansas Bar Association, a decree of final settlement was obtained in the probate court. On April 12, 1967, respondent was directed to pay over the assets of the estate, file his receipts and receive his final discharge. No settlement with the beneficiaries of the will was forthcoming for more than two years thereafter.

On May 20, 1969, a suit was filed to remove respondent as executor of this estate and require him to turn over the assets of

the estate. Respondent appeared in probate court in response to a petition for removal and sought additional time to respond to the petition. At that time, June 2, 1969, he was questioned before the court as to the funds and assets of the Samples estate as follows:

"MR. HAMPTON: I think you said, Richard, you were going to advise us of the whereabouts of the funds. Can you do that for us?

"MR. BARRETT: I have the funds.

"MR. HAMPTON: You have the funds on deposit somewhere?

"MR. BARRETT: We have the funds in our possession.

"MR. HAMPTON: You mean in your private possession and not deposited with others in any way?

"MR. BARRETT: They are in our possession.

"MR. HAMPTON: Are they earning revenue?

"MR. BARRETT: They are not earning revenue at the present time."

After these assurances were made in open court by Mr. Barrett a continuance was granted. He thereafter failed to appear on the date set for hearing and a judgment was rendered removing him as executor on June 27, 1969. The probate court, in removing respondent as executor, found:

". . . [T]hat he has failed, neglected or refused to appear, transfer funds, make payments or otherwise properly account to this Court for the handling and management of said estate; that the Executor has caused unnecessary, unreasonable, and unlawful delay in the administration and settlement of said estate; that the named executor has failed, neglected and refused to obey the orders of this Court; that the Executor has failed to properly handle and manage the assets in the Estate of Sarah Samples, Deceased; that Richard Barrett should be removed by this Court as the Executor of the Estate of Sarah Samples, Deceased; . . ."

When respondent appeared before the State Board of Law Examiners he admitted that he was short $15,734.10 in assets belonging to the Samples estate. On July 18, 1969, he borrowed $21,000 on his home and real estate in order to raise the $15,734.10 which was then paid through the probate court. The balance of the loan was used by him to settle the suit over the escrow agreement as previously mentioned.

The State Board of Law Examiners found that both charges in the complaint had been proven by unimpeachable evidence and by respondent's admissions. It found respondent commingled the funds from the Samples estate and from the escrow agreement with his own funds in violation of Canon 11 of the Canons of Professional Ethics adopted by the American Bar Association.

Canon 11 then in effect read as follows:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." (Professional Ethics, 198 Kan. xvIII.)

The evidence establishes that respondent kept large amounts of currency in his office safe. At one time he deposited $2,000 in currency in the trust account in the Peoples Bank in order to make up the total amount needed on March 6, 1969, to cover the $14,743.50 check which had been turned down for insufficient funds. On April 8, 1969, he took $5,000 in currency from his office safe to cover his insufficient fund check held in Arkansas. The source and identity of this currency taken from his office safe is not explained in the record. The $4,000 check received by respondent for his clients under the escrow agreement was either cashed or deposited by respondent in an account in the Greensburg State Bank which account was a firm or business account designated only as belonging to Barrett and Barrett, Attorneys. The $15,734.10 corpus of the Samples estate was not kept in identifiable bank accounts.

All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, should be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated. A lawyer should promptly notify a client of the receipt of his funds, securities, or other property. A lawyer should maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them. In addition it is the duty of the lawyer to promptly pay or deliver to the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive. (See rules of the Supreme Court, Rule No. 501, DR9-102, 205 Kan. xcii.)

Commingling is committed when a client's money is intermingled with that of his attorney and its separate identity lost so that it may be used for the attorney's personal or business expenses or subjected to claims of his creditors. The rule against commingling was adopted to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of the client's money. A trustee or attorney handling funds of a client cannot escape responsibility for

a trust account by the simple act of not keeping any record or data from which an accounting might be made. (*Black v. State Bar,* 57 C. 2d 219, 18 Cal. Rptr. 518, 368 P. 2d 118.)

Mr. Justice Nelson speaking for the Supreme Court of the United States in *Stockton v. Ford,* 52 U. S. 232, 13 Law Ed. 676, said:

"There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably or faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of this court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it." (p. 247.)

Respondent states that possibly he erred somewhere along the line, and undoubtedly was negligent in the way this matter was handled but that he had no intention of defrauding anyone of any monies, and that all such monies were paid back. He concludes that his actions do not merit the discipline of disbarment.

The actions of respondent, the commingling of funds and the failure to fulfill trust obligations occurred over a period of several years. Insufficient fund checks were issued by him to cover his trust obligations when he either knew or should have known there was no money in the checking account to pay the same. K. S. A. 21-555b provides the issuance of an insufficient fund check shall be prima facie evidence of intent to defraud if payment is not made to the holder within seven days after receiving notice that such check has not been paid by the bank. His restoration of funds lost through commingling with his own came only after suits had been filed against him and after a formal complaint had been filed with the board.

In *Ex Parte Wall,* 107 U. S. 265, 27 Law Ed. 552, 2 S. C. 569, Mr. Justice Field set forth some guidelines by which to measure facts which will justify disbarment as follows:

". . . It is only for that moral delinquency which consists in a want of integrity and trustworthiness, and renders him an unsafe person to manage the legal business of others, that the courts can interfere and summon him before them. He is disbarred in such case for the protection both of the court and of the public." (p. 307.)

The most obvious demonstration of a lawyer's lack of reliable character and integrity is in being proven guilty of flagrant disregard of the duties of honesty, fidelity, candor and fairness which he owes to clients and to the courts. Unfitness to advise and repre-

sent clients which justifies disbarment may be determined and resolved by answering the ultimate question of whether it has been shown the lawyer is an unsafe person to manage the legal business of others. (*Ex Parte Wall,* supra.)

It is intimated by respondent that some of the shortcomings set forth in the record may have occurred by reason of the action of his secretaries and other lay persons in the office.

A lawyer often delegates tasks to clerks, secretaries and other lay persons in his office. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. (The American Bar Association, Code of Professional Responsibility, Canon 3, EC 3-6.)

The work done by secretaries and other lay persons is done as agents of the lawyer employing them. The lawyer must supervise their work and be responsible for their work product or the lack of it. (Drinker, Legal Ethics p. 160 footnote 6; ABA Op. 85.)

One final matter which we deem important to our ultimate decision in this case arises from the respondent's conduct and statements in the probate court of Pratt county. Respondent made statements that he had the assets and funds of the Samples estate in his possession. These statements were untrue.

The attorney's oath which respondent took on his admission to the bar included the solemn oath he would neither do, nor consent to the doing of any falsehood in court. (*In re Phelps,* 204 Kan. 16, 27, 459 P. 2d 172, Cert. den. 379 U. S. 916, 25 L. E. 2d 97, 90 S. Ct. 922; Rules of the Supreme Court, Rule No. 210 [*h*], 205 Kan. LXVI.) The respondent knew or should have known that the statements made by him in open court were false and in violation of his oath as an attorney. The false statements were made for his own personal ends, to gain time.

On the basis of the record before us we have concluded that respondent has been guilty of flagrant disregard of the duties of honesty, fidelity, candor and fairness which he owed to clients and to the courts. The record demonstrates that he is an unsafe person to manage the legal business of others and justifies the ultimate discipline of disbarment.

Disbarment of Richard L. Barrett is decreed and the clerk of this court is directed to remove his name from the roll of attorneys.