## Investment of Municipal Funds

PACKEL, Attorney General, October 11, 1974.—Our opinion has been requested with respect to two related questions:

(1) May a municipality combine any of its several accounts for investment purposes?

(2) May one or more municipalities join together for the purpose of enhancing investment opportunities?

You have explained that yields on investments do depend to a very substantial degree on the minimum balance available for investment purposes. Thus, e.g., certificates of deposit under $100,000 usually cannot earn over 5½ percent while the interest rate for a certificate of deposit over $100,000 is not limited by Federal regulations and currently may earn as much as 12 percent. In addition, commission costs can be significantly reduced when securities are purchased in larger lots and in larger denominations. Smaller governmental units, therefore, operate at a disadvantage in obtaining high yields on investments unless they can combine accounts or combine their accounts with those of other governmental units. Furthermore, larger units of government face this same problem with their smaller accounts unless they can combine these accounts with other accounts.

It is understood that the two above questions are predicated upon assurances that:

(1) The funds are adequately secured;

(2) A clear audit trail is established;

(3) Earnings for each account are individually computed, credited and recorded;

(4) Receipts, disbursements and transfers are processed through separate accounts were required.

To further understand the issues, you have provided us with the following proposed example of how investment opportunities would be enhanced by combining accounts for investment purposes:

A local government unit invests $100,000 in United States Government Securities:

| | |
|---|---:|
| General Fund | $40,000 |
| Sewer Revenue Fund | 20,000 |
| Recreation Park Fund | 20,000 |
| Revenue Sharing Fund | 10,000 |
| Police Pension Fund | 5,000 |
| Liquid Fuel Tax Fund | 5,000 |
| | $100,000 |

Checks in the above amounts would be issued from the various funds in order to make up the total purchase price of the investments. Therefore, the disbursement for investments would be recorded in each fund and the resulting investment would be shown on the books of the particular fund. Upon maturity, the principal invested and the proportionate share of the interest received would then be returned to the respective fund from which the original principal amount came.

Please be advised that it is our opinion that the answers to your two questions should be answered in the affirmative, in accordance with the discussion below.

I. We begin with the proposition that all government units have the duty and responsibility to deposit and invest public funds in such a way as to provide for their security and to maximize the yield to the public treasury. These principles may be reinforced and/or limited by specific statutory provisions,[1] but it is obvious that any functioning public body must collect and disburse funds (and, of course, each has specifically been conferred with such powers by the legislature) and, in order to carry out such functions,

---

[1] See section II of this opinion for a discussion of some of these statutory limitations, namely requirements for separate accounts and prohibiting commingling.

must deposit public moneys and provide, where possible, for their investment. See, e.g., Act of July 12, 1972 (No. 185); 53 PS §§6780-454; Act of May 22, 1935, P. L. 233, 53 PS §23650; Act of June 24, 1931, P. L. 1206, as amended, 53 PS §56705.

Given such an inherent and necessary power and duty, it is not surprising that we find neither a general grant of authority to combine accounts for investment purposes nor a general denial of such authority. But we do find specific instances where the legislature has authorized combination of accounts for investment purposes:

"(e) For the purpose of investment or deposit at interest, all accounts in a sinking fund may be combined and each such combined account shall be entitled to its pro rata share of each deposit or investment": Local Government Unit Debt Act of July 12, 1972, (No. 185), Sec. 1004, 53 PS §6780-454. See also Act of August 10, 1951, P. L. 1199, as amended, 53 PS §5652.

While it would be possible to read these specific statutory authorizations as exclusive instances where an otherwise prohibited practice is permitted, we believe it would be improper to do so. In our judgment, these authorizations should be read as a significant indication that the legislature distinguishes a *combination* of accounts for *investment purposes* from the practice of "commingling" separate accounts so that they may be expended *for purposes other than those decreed by the legislature.* It is the latter, as we shall see in section II of this opinion, that is unlawful, not the former.

Sound fiscal practice, then, would dictate that within the parameters of authorized secured investments, municipalities have an obligation to seek investments with a high rate of return, and municipalities have

the discretion to pursue a variety of investment programs consistent with these principles. A municipality, as administrator of all the funds it holds, may develop an investment program for all of its funds. Such a program may be designed to combine funds for investment purposes so long as such combination does not violate a specific limitation on a municipality's discretion to manage the funds it holds.

Thus, given what we view as the inherent and necessary authority of local government units to deposit and invest public funds, given the clear desirability of such investments yielding the greatest amount possible for the benefit of the public treasury, and given what we view as a legislative recognition of the desirability and propriety of combining accounts for investment purposes, we conclude that municipalities may lawfully combine accounts for investment purposes.

Since under article 9, §5, of the Pennsylvania Constitution,[2] municipalities are given the broadest possible authority to cooperate with other governmental units in the exercise of any function, it follows that what a municipality may do on its own it may do in concert with other governmental units. See also the Act of July 12, 1972 (No. 180), esp. section 3, 53 PS §481, et seq., esp. §483, implementing this section of the Constitution.

II. Given this general conclusion, it is necessary to discuss whether combination of accounts, as described above, constitutes "commingling" as that

---

[2] "A municipality by act of its governing body may, or upon being required by intitiative and referendum in the area affected shall, cooperate or agree in the exercise of any function, power or responsibility with, or delegate or transfer any 'function' power or responsibility to, one or more governmental units, including other municipalities or districts, the Federal Government, any other state of its governmental units, or any newly created governmental unit."

word is used to describe a prohibited and unlawful practice. See, e.g., section 5(4) of the Act of June 1, 1956, P. L. 1944, 72 PS §2615.5(4).[3]

It is clear, as stated above, that the legislative purpose in providing for separate accounts is to assure that funds devoted to one purpose shall not be expended for another. Taking this purpose into account, and considering also that the legislature has not specifically defined the term "commingle," we consider the generally accepted judicial definition that commingling occurs when funds are so intermingled that the separate identity of the funds is lost. See, e.g., State of Kansas v. Barrett, 207 Kan. 178, 483 P. 2d 1106 (1971).

As the Office of the Auditor General has aptly pointed out:

"However, combining monies does not constitute commingling per se. The general principle of law as to the definition of commingling seems to require that monies become so blended so as to become *indistinguishable, Pfau v. State* 148 Ind. 539, and that the *separate identity* of the intermingled monies *be lost.* State v. Barnett, 207 Kan. 178; also Black v. State Bar of California, 57 Cal. 2d 219, 18 Cal. Rptr. 518. If clear and accurate accounting is performed by a political subdivision as to the amount of Liquid Fuel Tax monies invested, it is evident that those monies will not have lost their separate identity nor will they have become indistinguishable.

---

[3] "In order to qualify for its share of the moneys herein provided, each city, borough, town and township, shall—

". . .

"(4) Establish and maintain a special fund into which the moneys provided in section four, clause (1) of this act shall be deposited and into which no other moneys may be deposited or commingled,"

"Additionally, this conclusion is supported by the principles of accounting. In practice, where separate accounting is followed, the combination of various funds or monies does not constitute commingling. Consultation with Mr. Leo G. Emig, C.P.A., Bureau of Audits, has resulted in an affirmation of this very principle. A 'fund' is much nearer in definition to its identity in the books than to its physical location according to actual accounting practice": Memo of Frederick D. Lingle to Frank P. Lawley, Jr., of May 15, 1974.

It is clear, furthermore, that to combine accounts for investment purposes does not combine them in such a way as to lead to the possibility of moneys being *spent* for purposes other than legislatively mandated. The integrity of the accounts remains assured and that, to us, is the crux of the matter. Indeed, the combining of funds for investment purposes may be the most sound fiscal practice. Higher yields benefit all funds without jeopardizing the integrity or security of the individual funds.

In accordance with section 512 of the Administrative Code of April 9, 1929, P. L. 177, 71 PS §192, the Department of the Auditor General and the Treasury Department have been afforded the opportunity to present their views and they have indicated that they concur in this opinion.

Accordingly, we conclude that combining accounts for investment purposes does not constitute commingling and, for the reasons stated above, a municipality may combine any of its several accounts for investment purposes and may join with other municipalities for the purpose of enhancing its investment opportunities.[4]

---

[4] The issue has been raised as to what happens if the investment must be terminated prior to maturity. In our judgment,

those accounts which are in need of cash and for which the investment must be terminated should bear the "penalty." Since actually the "penalty" is a reduction in the amount of interest paid, such a procedure would mean that the accounts for which the investment was terminated will earn no interest and the interest earned will be distributed, pro rata, to the other accounts. It is naturally hoped that good management and sound planning will keep such instances to a minimum. In any event under the formula just described, the accounts not responsible for the termination may still earn more than they would under a separate investment program. In actual practice, furthermore, the obligation would likely be sold to a third party for a small loss.