The **PEOPLE** of The State of Colorado, Complainant,

v.

Matthew S. **SMITH**, Respondent.

No. 02PDJ084.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 13, 2003.

Attorney Regulation. The Hearing Board suspended Respondent Matthew S. Smith, attorney registration number 22681 from the practice of law for a nine-month period. In his handling of one dissolution of marriage matter, respondent failed to adequately supervise his legal assistant which resulted in the assistant's engaging in the unauthorized practice of law. Respondent's acting as her direct supervisor but failing to fulfill his professional obligations with regard to that supervision violated Colo. RPC 5.3(b). Respondent lost contact with his client and subsequently failed to make every effort to locate him and failed to take adequate measures to confirm the status of the case in violation of Colo. RPC 1.4(a) and Colo. RPC 1.4(b). Instead, respondent relied on his assistant to oversee the file constituting neglect in violation of Colo. RPC 1.3. Respondent

was ordered to pay the costs of the disciplinary proceeding.

Opinion by a Hearing Board consisting of the Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board Members ROBERT A. MILLMAN and MARILYN L. ROBERTSON, both members of the bar.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: NINE MONTH SUSPENSION*

A trial in this matter was held on February 27 and 28, 2003, before a Hearing Board consisting of the Presiding Disciplinary Judge, Roger L. Keithley and two Hearing Board Members, Robert A. Millman and Marilyn L. Robertson, both members of the bar. Kim E. Ikeler, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). Gary D. Fielder represented respondent Matthew S. Smith ("Smith"), who was also present.

At the trial, the People's exhibits 1 through 4 and 6 through 37, and Smith's exhibit A were admitted into evidence. Jennifer Reynolds, Roy Reynolds, Jr., Jeanette Ross, and Matthew Smith testified on behalf of the People. Smith testified on his own behalf. The Hearing Board considered the testimony of the witnesses and the exhibits admitted into evidence, the Joint Stipulation of Facts submitted by the parties, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Matthew S. Smith has taken and subscribed the oath of admission, was admitted to the bar of the Supreme Court on May 13, 1993, and is registered upon the official records of the Court, attorney registration number 22681. He is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

During the relevant time period from 1999 to 2001, Smith was a sole practitioner. He handled a large-volume practice with approximately half of the practice devoted to domestic law. Jeanette Ross ("Ross") worked as Smith's legal assistant from 1996 to 2001. During the period of her employment, Smith put measures in place to assure that all communications, oral and written were brought to his attention. Ross was required to receive, open and sort mail and record telephone messages. Ross would review incoming mail and place matters requiring prompt attention on Smith's desk with the client file. Less critical communication was placed in sorted stacks for Smith's review. Smith would then review his mail or telephone messages and instruct Ross what action to take on a given case. It was Smith's practice to review all court orders. Smith did not utilize computer software to track deadlines in cases. Smith and Ross did, however, manually record dates on two calendars. In addition, Smith allowed Ross to prepare form pleadings, prepare and send correspondence, docket court appearances, communicate with clients by phone, and handle settings with the court. Smith periodically reviewed case files to determine if cases were properly advancing.

Smith did not give Ross permission to sign his name to pleadings. Ross was permitted to write checks on Smith's operating account and utilize his signature stamp on operating account checks without prior authorization from Smith. Ross testified that she signed Smith's name to routine pleadings. Ross's testimony that Smith permitted her to sign his name to pleadings was not credible.

Roy and Jennifer Reynolds were married in 1995. In late 1998, Roy Reynolds, Jr. ("Reynolds") retained Smith to represent him in an uncontested divorce and paid him $800. Reynolds' address and phone numbers were noted on the client intake sheet.[1]

On January 27, 1999, Smith filed Reynolds' Petition for Dissolution of Marriage together with a Summons for Dissolution of Marriage or Legal Separation and Temporary Injunction in Arapahoe County District Court, Case No. 99DR0234. On the same day, the court issued a form order entitled "Domestic Case Management and Delay Reduction Order" requiring that Smith take specified actions by a date certain. The order required Smith

1. The Reynolds file disappeared when a new management company took over Smith's office.

to provide a copy to Mrs. Reynolds. Although Smith did not see the order, he was fully aware of the routine procedure in uncontested divorces and knew what deadlines were imposed by the court as a matter of course. Smith did not set a Temporary Orders Hearing or engage in the pre-hearing conference as required by the court's order. Smith knew that Mrs. Reynolds was pregnant and he felt it necessary to wait for the birth of the child before requesting that the court enter child support orders. Smith did not file a plan for alternative dispute resolution by the stated deadline due to his unconfirmed belief Reynolds' desired to forestall the divorce.

Thereafter, Mrs. Reynolds, who resided in Kansas, signed a Waiver and Acceptance of Service and Affidavit with Respect to Financial Affairs prepared by Smith, and returned both documents to Smith's office. Mrs. Reynolds did not obtain counsel at that time.

Between January and May, Smith and Reynolds were in communication. In May 1999, Smith drafted a Settlement Agreement and gave it to Reynolds to review. Reynolds took the Separation Agreement prepared by Smith to Kansas for Mrs. Reynolds to sign, and she signed it on June 16, 1999, had it notarized and gave it back to Reynolds. Reynolds gave it back to Ross shortly thereafter. Reynolds failed to sign it. Smith was unaware that Reynolds had returned the Separation Agreement to his office.

On May 20, 1999, Ross filed a Notice to Set regarding a hearing on Permanent Orders. Ross affixed Smith's signature to the Notice to Set. Thereafter, she neglected to call the court at the appointed time to set the hearing.

On June 7, 1999, the court issued a form Status Order notifying the parties that the Reynolds case would be dismissed unless Smith took certain specific actions. Smith did not see the Status Order, did not take any of the actions the court directed him to take, and did not provide a copy of the Order to the parties. Smith believed that the case was proceeding on course and that he was waiting for a return of the signed Separation Agreement by the parties.

Ross, in an effort to cover her failure to follow through on the Notice to Set, filed another Notice to Set on June 10, 1999. Smith signed the notice but did not confirm with Ross that she set the hearing. A hearing was not set.

Ross attempted to contact Reynolds but was unable to do so. Smith told Ross to send a letter to Reynolds and advise him that the case may be dismissed if the Separation Agreement was not filed. Smith believed Ross did so, but did not check the file to confirm that she had. Ross did not send a letter to Reynolds.

During July and August 1999, Reynolds attempted to contact Smith several times but was able to only speak to Ross. The calls were not routed to Smith, and Smith was not advised that Reynolds was attempting to reach him.

On August 11, 1999, the court dismissed the case on the grounds that the parties had not complied with the court's June 7, 1999 Status Order and required Smith to provide a copy of the order to the parties. Smith did not see the order and therefore did not comply with it. Smith continued to believe that Reynolds had lost interest in pursuing the divorce.

In October, Ross contacted the court to set the matter for a Permanent Orders hearing. It was at this point that she discovered the case had been dismissed. She determined to conceal this fact from Smith. On October 25, 1999, without Smith's knowledge or approval, Ross filed a Notice to Set Uncontested Permanent Orders, an Affidavit With Respect to Financial Affairs and the Separation Agreement both of which Mrs. Reynolds had signed on June 16, 1999. Ross hoped that the court would reopen the case. Nothing further occurred in Case No. 99DR0234.

In November 1999, Reynolds tried to reconcile with his wife, and she declined.

In early 2000, due to the lack of communication with Smith, Reynolds came to Smith's office to inquire about the status of his case. Reynolds never spoke directly with Smith; rather, he believed at the time that Ross was his lawyer. Reynolds confronted Ross with the court order dismissing the case in August

1999 which he first saw when he reviewed the court file at the courthouse. Ross told Reynolds the court had lost the paperwork and it would be necessary to file a new case. Ross did not tell Smith about Reynolds' visit to the office.

On March 6, 2000, without Smith's knowledge or approval, Ross commenced a new action on behalf of Reynolds by filing a Summons for Dissolution of Marriage and Temporary Injunction in Arapahoe County District Court under Case No. 00DR0782. Ross affixed Smith's signature to the documents. Ross falsely notarized a Waiver and Acceptance of Service and affixed Mrs. Reynolds' signature without her knowledge or authority.

The next day, without informing Smith, Ross sent a letter to Reynolds enclosing financial affidavits, a Separation Agreement and Child Support Worksheets. After receiving these documents, Reynolds came to the office and was angry with Ross. Ross did not inform Smith that Reynolds had visited the office. Smith believed the case was closed because Reynolds had not signed the Separation Agreement. Smith had no communication with Reynolds in 2000.

On March 20, 2000, Ross filed a Petition for Dissolution of Marriage and affixed Smith's name to the pleading.

In July 2000, Mrs. Reynolds believed the divorce had been finalized. She contacted Smith's office and spoke to Ross numerous times and to Smith once, asking for a copy of the decree. Ross informed her she would inquire into the status of the case and get back to her. Later Ross told Mrs. Reynolds she was not sure why there was no decree and that there was some confusion in Smith's office. After receiving a call from Mrs. Reynolds' father, Smith asked Ross about the status of the case. Ross said that Reynolds came in to sign the Separation Agreement and that they were waiting to receive a decree from the court. Smith then told Mrs. Reynolds that he was waiting for a decree from the court and that he would get back to her. Smith did not get back to Mrs. Reynolds.

On July 15, 2000, Ross drafted a second Separation Agreement. She affixed the signatures of Smith as counsel for Reynolds, Mrs. Reynolds, and the attorney's name who shared Smith's office as counsel for Mrs. Reynolds. Ross notarized the signatures stating that she witnessed the signatures in Adams County, even though Mrs. Reynolds continued to reside in Kansas. Ross filed it with the court. Neither Smith, Mrs. Reynolds nor the attorney who was purportedly signing as counsel for Mrs. Reynolds knew that Ross had affixed their signatures to the document. Ross knew at the time that Smith would not condone her drafting the Separation Agreement and affixing signatures to it.

In August 2000, Ross filed an Affidavit for Decree Without Appearance of Parties with the court. She affixed the signatures of Smith and the attorney who shared Smith's office as counsel for Mrs. Reynolds without their knowledge or approval. Ross knew the court would rely on the document as containing valid signatures and knew at the time she filed the document that she was making a false statement to the court.

Finally, in the spring on 2001, Mrs. Reynolds hired an attorney in Kansas to commence a new divorce proceeding at a cost of $1,500. On April 3, 2001, Ross sent a letter to Mrs. Reynolds' attorney in Kansas stating that the dissolution of marriage action in Arapahoe County had not been dismissed. She wrote the letter on behalf of Smith and affixed his signature to the letter without his knowledge. On the same date, she notified the clerk of the district court in Shawnee County, Topeka, Kansas, that the matter had not been dismissed, and again affixed Smith's name to the letter without his knowledge.

On April 12, 2001, a Decree of Dissolution of Marriage issued from Arapahoe District Court in Case No. 00DR0782. The Magistrate entered the Decree unaware that it had been presented by Ross with falsified signatures of the attorneys and parties.

Shortly thereafter, the divorce proceeding in Kansas was completed and Mrs. Reynolds obtained a decree.

Smith acknowledged that he was responsible for Ross's actions, but also believed that

his actions were based on his belief that Reynolds had decided not to go forward with the divorce. Smith also believed that were it not for Ross's actions as an "intervening cause," he would have been aware of the court's orders and of Reynolds' communication with Ross.

Both parties suffered harm as a result of the delay in obtaining the divorce: Mrs. Reynolds applied for but could not obtain financial aid because she was required to include Mr. Reynolds' income on her application, and she paid additional attorneys' fees to resolve the divorce. Mr. Reynolds was required to resolve child support issues in another jurisdiction. Both parties suffered personal inconvenience and stress for over one and one half years.

Smith refunded the $800 Reynolds paid to him.[2]

## II. CONCLUSIONS OF LAW

The Complaint filed in this matter alleges that Smith's conduct violated Colo. RPC 1.3 (an attorney shall act with reasonable diligence and promptness in representing a client) in claim one; Colo. RPC 1.4(a)(an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information) and Colo. RPC 1.4(b)(an attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) in claim two; Colo. RPC 5.3(a)(a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer) and Colo. RPC 5.3(b)(a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer) in claim three, and Colo. RPC 1.16(d)(upon termination an attorney take steps to the extent

reasonably practicable to protect a client's interests) in claim four.

Colo. RPC 5.3 provides:

With respect to a non-lawyer employed or retained by or associated with a lawyer:

(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of a lawyer;

(b) a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer...."

■ Smith entered into an attorney/client relationship with Reynolds, thereby forming an obligation to perform the agreed-upon professional services, including obtaining a divorce for Reynolds through the entry of permanent orders. By agreeing to perform the requested services, Smith inherently agreed that he would perform the services in accordance with the Colorado Rules of Professional Conduct. The Complaint alleges that Smith did not have measures in place which would give reasonable assurance that Ross's conduct was compatible with the obligations of a lawyer.[3] The evidence presented, however, revealed that Smith did have measures in place to reasonably assure that all communications with his office were promptly brought to his attention and that Ross would conduct herself in such a manner as was compatible with his professional responsibilities. Ross didn't follow those measures. Since such measures were in place, the charged violation of Colo. RPC 5.3(a) is dismissed.

■ The charged violation of Colo. RPC 5.3(b) requires a different consideration. Colo. RPC 5.3(b) focuses upon whether the attorney having direct supervisory authority over a non-lawyer adequately supervises that

---

2. The second divorce action filed by Ross was eventually dismissed upon Smith's motion.

3. It is not clear that the provisions of Colo. RPC 5.3(a), referring only to partners in law firms, is applicable to a lawyer practicing as a solo practi-

tioner. That issue, however, was not argued before the Hearing Board and is not decided here. For purposes of this decision we assume, without deciding, that Colo. RPC 5.3(a) applies to a solo practitioner.

individual. Smith had direct supervisory authority over Ross in this case. He delegated substantial responsibility to her and failed to review her work. Indeed, although the client file was in his office for the entire period of time the events were unfolding, he did not review that file to determine if Ross was, in fact, attending to the case as she described to him. Smith's failure to adequately supervise Ross allowed her to conceal the court's orders requiring that Smith take specific action on Reynolds' behalf, including setting a temporary orders hearing, engaging in alternative dispute resolution or informing the court that none was necessary, calendaring all deadlines set by the court, confirming that Smith's office was in contact with the client, and confirming the correct status of the case. A simple examination of the Reynolds file would have disclosed Ross's activities and alerted Smith of the problems developing in the case.

■ Smith's failure to adequately supervise Ross resulted in her engaging in the unauthorized practice of law. Smith's acting as Ross's direct supervisor but failing to fulfill his professional obligations with regard to that supervision violated Colo. RPC 5.3(b). Allowing a non-lawyer assistant to engage in the unauthorized practice of law by failing to supervise the non-lawyer is grounds for discipline. *People v. Reynolds,* 933 P.2d 1295, 1298–99 (Colo.1997); *People v. Stewart,* 892 P.2d 875, 877–78 (Colo.1995).

Smith argues that but for Ross's failing to advise him of Reynolds' attempts to contact him, her failing to provide him with the court's orders, and her failing to advise him that the case had been dismissed, he would not have neglected the client's case. Smith's argument is without merit.

Other jurisdictions have examined this issue. The Restatement (Third) of Law Governing Law. § 11 (2003) concerning a lawyer's duty of supervision, provides:

Supervision is a general responsibility of a principal (see Restatement Second, Agency § 503, Comment *f,* & id. §§ 507 & 510). A ... lawyer with authority to direct the activities of another lawyer or nonlawyer employee of the firm is such a principal. Appropriate exercise of responsibility over

those carrying out the tasks of law practice is particularly important given the duties of lawyers to protect the interests of clients and in view of the privileged powers conferred on lawyers by law. The supervisory duty, in effect, requires that such additional experience and skill be deployed in reasonably diligent fashion.

Lack of awareness of misconduct by another person, either lawyer or nonlawyer, under a lawyer's supervision does not excuse a violation of this Section. To ensure that supervised persons comply with professional standards, a supervisory lawyer is required to take reasonable measures, given the level and extent of responsibility that the lawyer possesses. Those measures, such as an informal program of instructing or monitoring another person, must often assume the likelihood that a particular lawyer or nonlawyer employee may not yet have received adequate preparation for carrying out that person's own responsibilities.

In *State ex rel. Oklahoma Bar Ass'n v. Braswell,* 663 P.2d 1228, 1231–32 (Okla.1983) the attorney raised the same argument as Smith, intimating that losing track of the client's case may have been occasioned by the inaction or neglect of his law clerk. The Oklahoma Supreme Court stated "[w]hile delegation of a task entrusted to a lawyer is not improper, it is the lawyer who must maintain a direct relationship with his client, supervise the work that is delegated and exercise complete, though indirect, professional control over the work product .... [t]he work of lay personnel is done by them as agents of the lawyer employing them. The lawyer must supervise that work and stand responsible for its product." *See, e.g., In re Morin,* 319 Or. 547, 878 P.2d 393, 401 (1994) (lawyer responsible for unauthorized practice of law by paralegal where, following lawyer's initial warning to paralegal, lawyer took no further steps to enforce instruction or to test employee's ability to identify inappropriate activities); *In re Bonanno,* 208 A.D.2d 1117, 617 N.Y.S.2d 584 (N.Y.App.Div.1994)(attorney reprimanded respondent for his conduct in the supervision of a non-attorney employee and in the manage-

ment of his law office in violation of the rules of professional conduct of New Jersey prohibiting gross neglect, aiding the unauthorized practice of law, and failure to supervise adequately a non-attorney employee); *Florida Bar v. Rogowski*, 399 So.2d 1390, 1391 (Fla.1981)(noting that an attorney's nonlawyer personnel are agents of the attorney and attorney is responsible for seeing that the agents' actions do not violate the Code of Professional Responsibility); *State v. Barrett*, 207 Kan. 178, 483 P.2d 1106, 1110 (1971)(noting that the work done by secretaries and other lay persons is done as agents of the lawyer employing them and the lawyer must supervise their work and be responsible for their work product or the lack thereof).

■ After initially pursuing the Reynolds matter and drafting a separation agreement, Smith lost contact with Reynolds and failed to inform himself of the status of the case. He failed to comply with the court's January 27, 1999 and June 7, 1999 orders. Even if as Smith asserts he did not see the court orders and therefore could not comply with them, he was fully aware of the procedures and deadlines set forth by the court in a divorce proceeding. Smith failed to make every effort to locate the client and acquire his signature on the Separation Agreement, and failed to take adequate measures to confirm the status of the case. Instead, he relied on Ross to oversee the file. Smith's failing to take the required steps to resolve the Reynolds matter constitutes neglect in violation of Colo. RPC 1.3.

■ Although Smith's conduct clearly constitutes neglect, it does not, however, rise to the level of abandonment. To find abandonment rather than mere neglect, the evidence must objectively indicate that counsel deserted, rejected, and/or relinquished his professional responsibilities. In the present case, although Smith should have taken measures to locate Reynolds, Ross did not inform Smith that Reynolds had come to the office inquiring about the status of the case. Smith continued to believe that Reynolds had lost interest in pursuing the divorce. Ross fostered Smith's lack of awareness of Reynolds' numerous attempts to contact him. He did not, therefore, desert, reject or relinquish his

professional responsibilities. Smith's actions did not terminate the attorney client relationship with Reynolds and the provisions set forth in Colo. RPC 1.16(d) were not triggered. Accordingly, claim four alleging a violation of Colo. RPC 1.16(d) is dismissed.

■ Initially, for approximately the first four months of representation, Smith stayed in adequate contact with Reynolds and kept him informed of the case status. Thereafter, however, for a period of a year and a half, Smith violated Colo. RPC 1.4(a) by failing to keep Reynolds reasonably informed about the status of the divorce proceeding. Smith violated Colo. RPC 1.4(b) by failing to explain the procedural status of the case to Reynolds to the extent reasonably necessary to permit the client to make informed decisions. His failure to inform himself of the status of the case does not abrogate his responsibility to keep the client reasonably informed.

Smith's conduct regarding the Reynolds matter resulted in injury to Reynolds: his divorce matter was dismissed, both parties suffered considerable distress not knowing whether they were divorced over a considerable period of time, and Reynolds must suffer the inconvenience of pursuing his legal rights in another jurisdiction.

### III. IMPOSITION OF SANCTION

■ The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for electing the appropriate sanction to impose for lawyer misconduct. ABA *Standard* 4.42(b) provides that suspension is generally appropriate when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Because Smith's continuing failure to properly supervise Ross in the Reynolds case covered a period of nearly twenty-seven months, his conduct established a pattern of neglect. A six-month suspension is consistent with other disciplinary measures ordered by the Supreme Court. *See People v. Williams*, 824 P.2d 813, 815 (Colo.1992) (attorney suspended for six months for continued and chronic neglect of three separate legal matters with require-

ment of reinstatement); *People v. Barber,* 799 P.2d 936, 941 (Colo.1990)(attorney suspended for six months for handling legal matter without adequate preparation, neglect of legal matter, failure to seek lawful objectives of client and gross negligence); *People v. Larson,* 716 P.2d 1093 (Colo.1986) (neglect of entrusted legal matter and failure to carry out contract of employment warrants six-month suspension); *People v. Bugg,* 200 Colo. 512, 616 P.2d 133 (1980) (failure to process estate, to file action, and to communicate with clients, when considered with the mitigating factor of personal problems, warrants six-month suspension).

Factors in aggravation and mitigation were considered pursuant to ABA *Standards* 9.22 and 9.32 respectively. In mitigation, Smith does not have a prior disciplinary record, *see id* at 9.32(a); he did not have a dishonest or selfish motive, *see id.* at 9.32(b); Smith made a timely, good faith effort to make restitution by returning to Reynolds his retainer, and endeavored to assist in rectifying the filing of multiple divorce cases, *see id* at 9.32(d), and Smith has made a full and free disclosure and has demonstrated a cooperative attitude toward the disciplinary proceedings, *see id.* at 9.32(f). In aggravation, Smith declined to acknowledge the wrongful nature of his conduct. He testified that he did not believe he did anything wrong in the matter. *See id.* 9.22(g). Moreover, the length of time involved in his neglect of the Reynold's case and the supervision of Ross established a pattern of misconduct. *See id.* 9.22(c).

In this case, Smith's lack of recognition of his wrongdoing in combination with the substantial damage imposed upon the administration of justice by the filing and processing of an unauthorized dissolution of marriage proceeding as well as the injury suffered by his client arising from his neglect and failure to supervise a non-lawyer employee, suggests that a period of suspension greater than six months is required. The Hearing Board finds that a nine-month suspension is appropriate under both Colorado law and the ABA *Standards.*

### IV. ORDER

It is therefore ORDERED:

1. MATTHEW S. SMITH, attorney regulation number 22681 is suspended from the practice of law for a period of nine months, effective thirty-one days from the date of this Order.

2. Pursuant to C.R.C.P. 251.32, Smith shall pay the costs in conjunction with this matter. Complainant shall file a Statement of Costs within fifteen (15) days of the date of this Order; Smith shall have ten (10) days thereafter to file a Response.